# WILLIAMS *v.* ZUCKERT, SECRETARY OF THE AIR FORCE, ET AL.

No. 133. Argued December 13, 1962.—Decided January 14, 1963.

*David I. Shapiro* argued the cause for petitioner. With him on the briefs was *Sidney Dickstein.*

*Stephen J. Pollak* argued the cause for respondents. On the brief were *Solicitor General Cox, Acting Assistant Attorney General Guilfoyle, Bruce J. Terris, Alan S. Rosenthal* and *David L. Rose.*

PER CURIAM.

Petitioner, a veteran with civil service status, was discharged from his civilian position with the United States Air Force for alleged misconduct. Subsequent to unsuccessful prosecution of appropriate administrative proceedings for review of his discharge, he brought suit in the District Court, which granted summary judgment to the respondent Air Force. The Court of Appeals affirmed.

111 U. S. App. D. C. 294, 296 F. 2d 416. Certiorari was granted, 369 U. S. 884, to consider whether, under the principles enunciated by this Court in *Vitarelli* v. *Seaton,* 359 U. S. 535, 544–545, petitioner's discharge was vitiated by an improper denial of a right to cross-examine at his hearing before the Civil Service Commission on appeal pursuant to § 14 of the Veterans' Preference Act of 1944 [1] and the implementing regulations [2] promulgated by the Commission.

Review of the record and argument of counsel disclose, however, that the *Vitarelli* issue is not adequately presented by this case; accordingly, we conclude that the writ of certiorari should be dismissed as improvidently granted.

Although amply notified in advance of the nature of the charges, the names of the witnesses whose affidavits had supplied the factual basis for his dismissal, and the date of the hearing, neither petitioner nor his counsel made any request, prior to the hearing, of the Air Force, of the Commission or its examiner, or of the witnesses themselves, for their appearance for cross-examination. The request for production of the witnesses, made only át the hearing by petitioner's counsel, was neither timely nor in conformity with the applicable regulations, which contemplate that the party desiring the presence of witnesses, either for direct examination or cross-examination, shall assume the initial burden of producing them.[3]

Had petitioner discharged this burden by timely attempt to obtain the attendance of the desired witnesses and through no fault of his own failed, then, to give mean-

---

[1] 58 Stat. 390, as amended, 5 U. S. C. § 863.

[2] 5 CFR, Part 22.

[3] 5 CFR § 22.607, titled "Appearance of witnesses," provides:

"The Commission is not authorized to subpoena witnesses. The employee and his designated representative, and the employing agency, must make their own arrangements for the appearance of witnesses."

ing to the language contained in the regulations affording the "opportunity . . . for the cross-examination of witnesses," [4] the Air Force would have been required, upon proper and timely request, to produce them, since they were readily available and under the Air Force's control. *Vitarelli* v. *Seaton,* 359 U. S. 535, 544–545, would so require. Here, however, though petitioner seeks to rely upon the regulations, he has failed to bring himself within them.

Petitioner was accorded ample opportunity to present his own case and rebut the charges against him at several levels of the proceedings before the Air Force and the Civil Service Commission.

The writ of certiorari is dismissed.

MR. JUSTICE HARLAN concurs in the result.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

After 16 years of faithful government service, petitioner has been branded with a stigma and discharged on the strength of three affidavits. Though he asked that these affiants be produced at his hearing, none was called to confront him. The Court says that petitioner's request came too late to conform with the applicable Regulation.[1] Due process dictates a different result. We have heretofore analogized these administrative proceedings that cast the citizen into the outer darkness to proceedings that "involve the imposition of criminal sanctions"; and we have looked to "deeply rooted" principles of criminal law

---

[4] 5 CFR § 22.603 provides:

"Opportunity will be afforded for the introduction of evidence (including testimony and statements by the employee and his designated representative and witnesses and by representatives of the agency and its witnesses) and for the cross-examination of witnesses."

[1] See 5 CFR, pt. 22, §§ 22.603, 22.607.

for guidance in construing regulations of this character. *Peters* v. *Hobby,* 349 U. S. 331, 344–345; *Greene* v. *McElroy,* 360 U. S. 474, 496. By that analogy we should construe the present Regulation as being protective of the right of confrontation, not as providing a technical way in which the right is either saved or lost.

Confrontation and cross-examination are, as I understand the law, vital when one's employment rights are involved. See *Greene* v. *McElroy, supra,* 496; *Beard* v. *Stahr,* 370 U. S. 41, 43 (dissenting opinion). Petitioner is not merely being "denied . . . the opportunity to work at one isolated and specific military installation." *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, 896. The stigma now attached to him will follow him, whatever employment he seeks. The requirements of due process provided by the Fifth Amendment should protect him against this harsh result by giving him the same right to confront his accusers as he would have in a criminal trial. See *Mattox* v. *United States,* 156 U. S. 237; [2] *Kirby* v. *United States,* 174 U. S. 47, 55; *Curtis* v. *Rives,* 123 F. 2d 936, 938. For this discharge will certainly haunt his later life as much as would a conviction for willful evasion of taxes.

A trial for misconduct involving charges of immorality, like one for disloyalty, is likely to be "the most crucial event in the life of a public servant. If condemned, he is branded for life as a person unworthy of trust or confidence. To make that condemnation without metic-

---

[2] "The primary object of the constitutional provision . . . [is] to prevent depositions or *ex parte* affidavits . . . being used . . . in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 156 U. S., at 242–243.

ulous regard for the decencies of a fair trial is abhorrent to fundamental justice." *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 180 (concurring opinion).

Petitioner has been deprived of his job and permanently stigmatized without being confronted by his accusers, even though he requested that they be called and even though they could easily have been produced. Petitioner does more than rely on the Regulation. He relies on the Fifth Amendment and the Sixth Amendment. To be sure, his request at the hearing was not phrased in constitutional terms. But administrative procedures are not games in which rights are won or lost on the turn of a phrase. In the District Court he claimed that this procedure "was arbitrary and capricious and violative of the Fifth and Sixth Amendments of the Constitution." That adequately raised the issue. See *Terminiello* v. *Chicago,* 337 U. S. 1, 6; cf. *Williams* v. *Georgia,* 349 U. S. 375. It should be remembered that while a veteran's proceeding before the Civil Service Commission is called an "appeal," it is usually the first opportunity the employee has for a "hearing" on the charges against him. In *Vitarelli* v. *Seaton,* 359 U. S. 535, 544–545, we construed a Regulation substantially similar to the present one as requiring the Interior Department to call as witnesses all "non-confidential" informants. The Government advances no persuasive reason why that case does not control this one. At the hearing, when petitioner requested that the witnesses be called, his request was rejected because "the Air Force Academy saw no need for their attendance." But one who desires confrontation with the accuser has such a conflict of interest with his adversary that he, rather than his opponent, can better determine what would or might be useful to his defense.[3]

---

[3] A related problem revealing the manner in which business firms are barred from participating directly or indirectly in government contracts without notice, opportunity to be heard, and confrontation

I would not say that this important constitutional right was lost on the technicality the Court now embraces.

We should not saddle these administrative proceedings with strict formalities concerning the manner in which exceptions or objections are made. They have no place in criminal proceedings, as Rule 51 of the Federal Rules [4] makes clear; and it is unhealthy to let them take root in administrative hearings where human rights are involved that are as precious to "liberty," within the meaning of the Fifth Amendment, as a person's right not to be fined or imprisoned unless prescribed procedures are followed.

The judgment below should be reversed and the case remanded for a full hearing.

---

is discussed in the Committee Report on Debarment and Suspension of Persons from Government Contracting and Federally Assisted Construction Work prepared for the Administrative Conference of the United States by the Committee on Adjudication of Claims, October 1, 1962.

[4] Rule 51 provides:

"Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor; but if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."