Raymond J. HANIFAN
v.
The UNITED STATES.
No. 92–63.

United States Court of Claims.
Dec. 17, 1965.

ard J. Meiselman, New York City, of counsel.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.*

Plaintiff, a veterans' preference eligible, was removed on charges in 1959 from his position as a special agent in the Internal Revenue Service. The Civil Service Commission, after a hearing under Section 14 of the Veterans' Preference Act, 58 Stat. 387, 390, as amended, 5 U.S.C. § 863, sustained the removal.

The case is before the court on cross-motions for summary judgment.[1] Plaintiff's principal contention in this court is that he was deprived of a procedural right, at the Civil Service Commission hearing, by the refusal of the Internal Revenue Service to produce certain of its employees to testify.

The facts pertinent to this issue are as follows: By letter of November 28, 1958, signed by James A. O'Hara, District Director, plaintiff was charged in four detailed specifications by the Internal Revenue Service with inefficiency, and given notice of proposed removal from the Service. After exchanges of correspondence which included a categorical denial by plaintiff of the charge, the Service found that the charge was supported by substantial evidence, was sustained, and warranted his removal which was effected on January 9, 1959.

Plaintiff filed a timely appeal to the Civil Service Commission on the ground that the charges which were made

John I. Heise, Jr., Washington, D. C., attorney of record, for plaintiff. Leon-

---

* This opinion incorporates, with minor changes and some supplementary discussion, the opinion prepared, at the direction of the court under Rule 54(b), by Trial Commissioner Richard Arens.

1. Defendant moves for summary judgment, or, in the alternate, for a stay in proceedings herein "pending completion of review of plaintiff's removal by the Civil Service Commission, under what the court may determine to be proper procedure before that body." Plaintiff moves for summary judgment, or, in the alternate, for an order denying defendant's motion for summary judgment on the ground that material issues of fact do exist "relative to plaintiff's allegations of arbitrary and capricious action when plaintiff refused to tamper with cases pending before the Internal Revenue Service."

against him were without merit and on the ground that the notice of charges was not substantially sufficient and in detail so as to comply with the intent and purpose of the Veterans' Preference Act. In an affidavit, dated January 14, 1959, plaintiff requested the Commission to obtain from the Internal Revenue Service, in connection with the appeal, numerous and voluminous records which he specified. He also alleged that the charges against him were motivated by political prejudice and requested that a hearing be granted, to take place in New York City, "at which time appellant [plaintiff] and counsel will be present, together with such witnesses as appellant will request in his final affidavit." Thereafter, the District Director of the Internal Revenue Service, Albany, New York District (in which plaintiff had been employed), transmitted to the Commission the requested material, but with certain deletions and omissions, and an extensive affidavit, dated October 6, 1960, commenting on various details of the removal action.

By affidavit dated November 15, 1960, plaintiff protested to the Commission that certain of the requested material had not been received, requested that additional material be obtained from the Service, and requested that the Service produce at the hearing as witnesses the Albany District Director, James O'Hara, who had signed the notice of proposed removal of plaintiff, and the Chief of the Intelligence Division, John Mullen, plaintiff's former supervisor, against whom plaintiff had at one time instituted a grievance proceeding.

In response to plaintiff's affidavit dated November 15, 1960, Mr. O'Hara submitted additional information by letter dated December 29, 1960. It can properly be assumed that Mr. O'Hara was cognizant of the request in plaintiff's affidavit of November 15, 1960, that he (Mr. O'Hara) and Mr. Mullen be produced by the Service at the hearing as witnesses.

On January 12, 1961, the Commission set the date of February 14, 1961, for the hearing and advised plaintiff in pertinent part as follows:

\*   \*   \*   \*   \*   \*

You may be represented in person or by a representative of your own choosing at the hearing. In addition, you have the right to present witnesses and to make any statements which you desire to have placed in the record, which you have not already made. The agency from whose adverse decision you are appealing is being invited to participate. Both the witnesses whom you present and those who may be presented by the agency may be cross-examined by the opposite side. As the Commission does not have the power of subpoena, you will be required to make your own arrangements for the appearance of your witnesses. \*   \*   \*

Shortly after the hearing convened on February 14, 1961, plaintiff's counsel inquired if the witnesses requested by the appellant (plaintiff) would be supplied by the Service. Whereupon, the Service representative advised that the Service did not intend to present either Mr. O'Hara or Mr. Mullen. During the course of the hearing, plaintiff's counsel protested the failure of the Service to produce Mr. O'Hara and Mr. Mullen as witnesses "to test their credibility and accuracy." Included in plaintiff's testimony were statements concerning hostility between plaintiff and Mr. Mullen, his former supervisor. After plaintiff and witnesses produced by the Service testified, the hearing was continued until August 16, 1961.

Following the hearing of February 14, 1961, Mr. O'Hara and Mr. Mullen both reviewed the transcript of the hearing and submitted to the Commission detailed rebuttal statements in affidavit form. There is no question but that both Mr. O'Hara and Mr. Mullen were cognizant of plaintiff's desire, as expressed in the transcript, that they appear as witnesses.

On June 27, 1961, plaintiff submitted to the Commission an affidavit protesting the affidavits "from persons whose

presence had been requested by your deponent but whom the Agency [Internal Revenue Service] refused to present." Plaintiff's affidavit continued: "In effect, these persons, and in particular, John T. Mullen, are hiding behind written affidavits while refusing to appear and be cross-examined as to veracity, accuracy and credibility." Plaintiff then requested production of "other papers not as yet submitted, although previously requested," and that "the Commission obtain the personal appearance of John T. Mullen, James A. O'Hara and Francis D. Sullivan."

In a letter of July 11, 1961, the Commission advised plaintiff that the hearings would reconvene on August 8, 1961, and repeated the statements made to plaintiff prior to the first hearing regarding the appearance of witnesses. Upon resumption of the hearings, plaintiff's counsel inquired if the Service intended to produce "the witnesses whose affidavits were submitted" and was informed by the Service representative that the Service did not.

On September 19, 1961, the Commission's regional office issued its opinion and decision sustaining the removal action. In the course of the opinion, reliance was placed upon the affidavits of Mr. O'Hara and Mr. Mullen as a basis for the decision.[2]

On October 30, 1961, plaintiff appealed to the Commission's Board of Appeals and Review and requested on several grounds that the Board reverse the decision of the regional office and reinstate him. In the appeal, plaintiff stated:

\* \* \* \* \* \*

On several occasions the Agency was requested to produce Director O'Hara and Mr. Mullen. This request was arrogantly disregarded.

Nevertheless, affidavits were submitted by them, which affidavits could not be cross-examined and which were erroneous, false and self-serving in nature. Afraid to appear in person, they fearlessly submitted documents which they must know, of necessity, to be wrong. The appellant on the other hand testified fully under oath and completely controverted the allegations of Mr. O'Hara and Mr. Mullen. The appellant was available for cross-examination. He was not cross-examined.

\* \* \* \* \* \*

By letter of March 2, 1962, the Board of Appeals and Review advised plaintiff's counsel that it had affirmed the decision of the regional office. In the course of the letter, the following appears:

\* \* \* \* \* \*

You also stated that you requested the agency to produce Director O'Hara and Mr. Mullen, and that this request was arrogantly disregarded. You admit, however, that affidavits were submitted by these individuals. This was entirely a matter for the agency concerned as to whether it desired to produce certain witnesses since the Commission does not have the power of subpoena.

\* \* \* \* \*

There are two Commission regulations which bear on the issue of the refusal of the Service to produce the witnesses to testify. A Commission regulation (5 C.F.R. § 22.603) provides:

Opportunity will be afforded for the introduction of evidence (including testimony and statements by the employee and his designated representative and witnesses and by representatives of the agency and its witnesses)

---

**2.** The ultimate findings and recommendation read as follows:
It is the finding of this office that the Department complied with all of the procedural requirements of the Law and Regulations. It is also the finding of this · office that the action taken by the De-

partment in the appellant's case, based on the sustained charge and four sustained specifications, is considered to be taken for such cause as will promote the efficiency of the Service. Accordingly, the Department's action in separating the appellant is sustained.

and for the cross-examination of witnesses.

Another regulation (5 C.F.R. § 22.607) provides:

> The Commission is not authorized to subpoena witnesses. The employee and his designated representative, and the employing agency, must make their own arrangements for the appearance of witnesses.

In Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486 and 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), the Supreme Court considered the foregoing regulations in connection with a somewhat similar case in which the petitioner who had been dismissed from the Air Force alleged that he had been denied the right of cross-examination of witnesses whom the Air Force failed to produce at the Commission hearing. The Court remanded the case to the District Court with instructions to hold a hearing and determine "whether the petitioner, desiring the presence of witnesses at his hearing, either discharged his initial burden under the applicable regulations by making timely and sufficient attempt to obtain their presence or, under the circumstances and without fault of his own, was justified in failing to make such attempt, and, if so, whether proper and timely demand was made upon the Air Force so that it was required to produce such witnesses for cross-examination."

In Begendorf v. United States, 169 Ct.Cl. 293, 340 F.2d 362 (January 1965), counsel for plaintiff therein sent a telegram to the Treasury Department the night before the Civil Service Commission hearing on the dismissal asking for some 10 agents to appear. In determining whether the plaintiff's procedural rights were violated (under the same regulations applicable to the instant case) by the refusal of the Treasury Department to produce the agents at the hearing, this court noted that the plaintiff therein did not show (or offer to show) that he had attempted privately to arrange for the appearance of the witnesses or that he had some proper excuse for

not doing so. The court expressed agreement with the decision of the Second Circuit in McTiernan v. Gronouski, 337 F.2d 31 (1964) that, in the absence of such a showing (or offer to show) or of some proper excuse, no procedural rights to which a plaintiff is entitled are violated when a Department fails to respond to his request for the production of witnesses at a hearing. In rejecting the contention of plaintiff in Begendorf, supra, that his procedural rights had been violated, the court pointed out that he had not made nor offered to make the required showing; that, so far as the record showed in the case, none of the men whom the Treasury Department failed to produce was an accuser, an informant, a witness, or an affiant against plaintiff; and that, in any event, at least two of the three grounds given by plaintiff's counsel for calling the agents were invalid on their face and the Department would not have been required to produce the agents for such purposes. See, also, De Nigris v. United States, Ct.Cl., No. 18–63, decided Feb. 19, 1965; Brown v. Macy, 340 F.2d 115 (C.A.5, 1965); Studemeyer v. Macy, 120 U.S.App.D.C. 259, 345 F.2d 748 (C.A.D.C.1965), cert. denied 382 U.S. 834, 86 S.Ct. 78, 15 L.Ed.2d 77.

We come then to an appraisal of the facts in the instant case in light of the above-decided cases. It is clear that plaintiff did not attempt to arrange privately for attendance of the witnesses at the hearing. Was he, in the words of the Supreme Court, "justified in failing to make such an attempt?" Was there, in the words of this court, "some proper excuse" for plaintiff's failure? There are peculiar factual elements in this case which in the aggregate compel the conclusion that plaintiff was justified in failing to attempt to arrange privately for the attendance of the witnesses and that he had proper excuse for this failure.

The affidavit of Mr. Mullen, plaintiff's former supervisor, concerning plaintiff was (irrespective of its validity) damaging to plaintiff's interest. Mr. Mullen

was at all pertinent times cognizant of plaintiff's repeatedly expressed and unhonored request of the Service that he (Mr. Mullen) appear at the hearing for cross-examination. Plaintiff had in effect asked him (through the Service) to appear. Could plaintiff, under these circumstances, reasonably expect that Mr. Mullen would accept plaintiff's personal invitation to appear and subject himself to cross-examination when the Service which could have produced him at any time declined to ask him to appear pursuant to plaintiff's repeated requests?

James O'Hara, the District Director of the Albany, New York District in which plaintiff had been employed, had, on behalf of the Service, signed the charge against plaintiff and processed plaintiff's affidavit of November 15, 1960, in which plaintiff had requested that he (Mr. O'Hara) and Mr. Mullen be produced by the Service at the hearing as witnesses. Since Mr. O'Hara as District Director did not, on behalf of the Service, produce himself for the hearing in response to the request in the affidavit, plaintiff would be entitled to conclude that Mr. O'Hara as an individual would be equally unresponsive to a personal invitation from plaintiff to appear. Mr. O'Hara was at all pertinent times cognizant of plaintiff's repeatedly expressed request for his appearance and knew that officially at least the Service would not comply. The conclusion is inescapable that plaintiff could not reasonably have expected that Mr. O'Hara would accept his personal invitation to appear if such invitation were tendered.

Mr. Mullen and Mr. O'Hara were at all times plaintiff's principal adversaries in the removal proceedings. After the first hearing, both had submitted extensive affidavits in rebuttal to plaintiff's testimony and reliance was placed upon these affidavits by the Commission's regional office in sustaining the removal action. Plaintiff would have been justified in both instances in concluding that a personal invitation by him to either Mr. Mullen or Mr. O'Hara to appear would be simply an exercise in futility. It is clear also that plaintiff's requests made over the course of several months to the Service for the appearance of Mr. Mullen and Mr. O'Hara were timely.

Defendant's assertion that plaintiff failed to exhaust his administrative remedy by not raising the issue of the alleged procedural error before the Civil Service Commission is without merit. As previously set forth herein, plaintiff vigorously complained to the Commission's Board of Appeals and Review of the failure of the Service to produce Mr. Mullen and Mr. O'Hara at the hearing. There is no showing made here that this complaint should have been in any specific form or that plaintiff had an obligation to direct the attention of the Board to the specific language of its own regulations.

Defendant contends that, if the court finds a procedural error was committed, plaintiff must still show that he was injured by the error; and, in reliance on United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963) and similar cases, suggests that the court should stay proceedings in order to allow the Commission to conduct a rehearing and accord plaintiff his procedural rights. Defendant has filed with the court an affidavit of the Service stating that it will in such event produce Mr. Mullen and Mr. O'Hara for a rehearing, and an affidavit of the General Counsel of the Commission that it will in such event grant a rehearing.

The heart of plaintiff's case is his position that Mr. Mullen and Mr. O'Hara, who were his principal adversaries, were motivated by political prejudice; in other words, that they were out to "get" him. One of the best ways in which plaintiff could prove his thesis would be to cross-examine them. It is implicit, moreover, in both Zuckert and Begendorf, supra, that if under the cited regulations of the Commission, a plaintiff is improperly denied the opportunity for the cross-examination of witnesses, such denial is a denial of a procedural right which is

fatal to the proceedings. The rule has been firmly established in pay cases "that unlawful administrative action depriving a claimant of a procedural right voids the action and leaves the plaintiff entitled to his money otherwise due, until (at the least) proper procedural steps are completed * * *." Garrott v. United States, 169 Ct.Cl. 186, 340 F.2d 615 (January 1965). See also Washington v. United States, 137 Ct.Cl. 344, 147 F.Supp. 284, petition for cert. dismissed, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19 (1957); Watson v. United States, 142 Ct.Cl. 749, 162 F.Supp. 755 (1958); Shadrick v. United States, 151 Ct.Cl. 408 (1960).

■■ Defendant says that that rule is applicable only to a procedural defect or irregularity in the proceedings before the employing agency prior to removal, and is inapplicable to such a defect in the appellate proceedings before the Civil Service Commission (after the employee has been separated by his agency). This court has not hitherto made any such distinction (see Stringer v. United States, 117 Ct.Cl. 30, 50–51, 52, 90 F.Supp. 375, 379–381 (1950); Chisholm v. United States, 149 Ct.Cl. 8 (1960); Shadrick v. United States, 151 Ct.Cl. 408 (1960),[3] but defendant argues that the distinction is nevertheless required by the statutes (the Veterans' Preference Act, 5 U.S.C. § 863, and the Lloyd LaFollette Act, 5 U.S.C. § 652) which indicate—in the Government's eyes—that Civil Service Commission review comes after the employee's removal and forms no part of the removal process. We do not so read the legislation. For employees entitled to Commission review, Commission action is an integral step in the removal process and the employee is not lawfully discharged until he has had (or has waived or forfeited) his rights to review. The references in the legislation to discharge or removal by the employing agency are convenient shorthand citations to the preliminary separation which the agency can effect. These references do not mean that the agency's action is fully effective to separate the employee for all purposes; as is often the case in judicial proceedings, an appeal or application for review by the Commission suspends the final operative effect of the initial decision. It follows that an employee who has been deprived of a procedural right by the Commission must be regarded as not yet lawfully removed and thus entitled to his pay otherwise due. No more than in the case of a procedural violation by the employing agency (e. g., Elchibegoff v. United States, 106 Ct.Cl. 541, petition for cert. dismissed, 329 U.S. 694, 67 S.Ct. 629, 91 L.Ed. 607 (1946); Wittner v. United States, 110 Ct.Cl. 231, 76 F.Supp. 110 (1948)) is there a requirement that the employee show that he would not have been discharged had he been accorded his procedural rights by the Commission. Cf. Greene v. United States, 376 U.S. 149, 162, 84 S.Ct. 149, 11 L.Ed.2d 576 (1964); Silver v. New York Stock Exchange 373 U.S. 341, 365, 83 S.Ct. 1246, 10 L.Ed.2d 389, fn. 18 (1963).[4]

---

**3.** The decisions of this court on which defendants relies are inapposite. In Schmidt v. United States, 145 Ct.Cl. 632 (1959), the Commission committed a substantive error, not a procedural one, in appraising the employee's claim that he had been reassigned for political reasons; the court ordered a trial (before our trial commissioner) to determine whether his allegation was correct, just as it often has done in comparable personnel cases. In Hofflund v. United States, 154 Ct.Cl. 66, 71 (1961), the agency had responded to a district court decision in the plaintiff's favor and the court held that he could not recover in this court because, if he were dissatisfied,

he should have sought further relief from the district court or from the Civil Service Commission. In Taylor v. United States, 131 Ct.Cl. 387, 391 (1955), and Hart v. United States, 148 Ct.Cl. 10, 16, 17, 284 F.2d 682, 687 (1960), and similar cases, the court held that an improper suspension during the 30-day notice period was a separate and distinct matter which did not invalidate the removal proceedings.

**4.** Since reinstatement cases in the district courts seek restoration to duty, not merely damages for an illegal discharge, it is possible that the rule for those cases may be different.

It is therefore concluded that plaintiff is entitled to recover, and that defendant's motion for summary judgment is denied, and plaintiff's cross-motion granted, with the amount of recovery to be determined under Rule 47(c).[5]

5. In view of the above ruling, it is unnecessary to consider other allegations of plaintiff, i. e., that the charges were not sufficiently specific, that plaintiff was denied the right to a personal hearing by the Service, that plaintiff was refused the right to cross-examine a certain witness at the hearing, and that the Service failed to produce certain documents requested by plaintiff.