357 F.2d 62
 Grant JENKINS, Appellant,
v.
John W. MACY, L. J. Andolsec and Robert E. Hampton, constituting the United States Civil Service Commission and the Regional Personnel Officer, General Services Administration, Appellees.
 No. 17958.
 United States Court of Appeals Eighth Circuit.
 February 21, 1966.
 
 Forrest Boecker, St. Louis, Mo., made argument for the appellant and filed typewritten brief.
 Lawrence R. Schneider, Atty., Dept. of Justice, Washington, D. C., made argument for the appellee and filed brief with John W. Douglas, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Morton Hollander, Chief, Appellate Section, Civil Division, Washington, D. C., and Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.
 Before VOGEL, Chief Judge, BLACKMUN and GIBSON, Circuit Judges.
 VOGEL, Chief Judge.
 
 
 1
 This appeal is taken from a summary judgment rendered against plaintiff-appellant, Grant Jenkins, in an action brought under 5 U.S.C.A. §§ 652, 863 and 1009. The judgment upheld a determination by the United States Civil Service Commission that appellant was properly removed from his position as custodial laborer, WC-2, at $2.02 per hour with the federal General Services Administration (GSA) in St. Louis, Missouri. Appellees herein are officers or members of GSA and the Civil Service Commission. Appellant was discharged for "* * * failure to demonstrate a conscientious effort to pay just financial obligations, and to live up to arrangements agreed upon for liquidating indebtedness". We affirm the decision of the District Court.
 
 
 2
 Jenkins, a veterans' preference eligible, was discharged under relevant provisions of the GSA Administrative Manual. GSA Order DOA 5410.1 CHGE 65, dated June 27, 1962, provides that for
 
 
 3
 "Indebtedness: Failure to demonstrate conscientious effort to pay just financial obligations, or to live up to arrangements agreed upon for liquidating indebtedness"
 
 
 4
 an employee could be "warned" for the first offense, "officially reprimanded" for the second offense, and "removed" for the third offense. As stated in GSA Order 6 COM 6240.6, dated February 16, 1960, in pertinent part:
 
 
 5
 "2. POLICY.
 
 
 6
 "a. All employees are expected to pay their debts. When an employee's attention is called by an official of this agency to his neglect in payment of such an obligation, he will be expected to take necessary steps to adjust the complaint in a satisfactory manner and to so inform such official. It is not our intention to act as a collection agency, but employees must understand that just obligations which are allowed to become delinquent reflect adversely on the employee's character and result in embarrassment to GSA.
 
 
 7
 "b. Failure of an employee to demonstrate a conscientious effort to discharge personal obligations resulting in embarrassment to GSA makes him subject to disciplinary action."
 
 
 8
 The records and exhibits herein reveal that eleven different loan companies or persons wrote or sent 40 complaints and/or contracts concerning the indebtedness of appellant to GSA in the three-year period beginning in January of 1960. Through letters of April 27, 1962, and May 14, 1962, appellant was warned by GSA because of his "repeated failure to meet financial obligations". There is no record of any reply to these warnings by appellant, even though he was advised that he had the right to so reply.
 
 
 9
 On January 3, 1963, an official reprimand was sent to appellant for "failure to demonstrate a conscientious effort to pay just financial obligations", including an unsatisfied judgment claim rendered against him. Reference was made to a large number of complaints made to GSA concerning the appellant. In this letter of reprimand appellant was also warned of possible removal from his job. Although notified that he could submit a written statement of explanation or file a formal appeal to the reprimand, there is no record that appellant did either of these things.
 
 
 10
 On February 13, 1963, appellant was notified by letter of his proposed removal from government service. He replied in writing on February 19, 1963, that "* * * some of these bills I have paid off, some I have not paid regular, but I am trying". He stated further that:
 
 
 11
 "* * * I am really trying hard to pay my debts. I know I could have declared myself bankrupted [sic] and cleared my slate clean. But I am not that kind of person, I mean to pay my bills from now on, I may not always pay on time, but I intend to pay all of them. * * * I hope you will reconsider my removal and give me one more chance to prove myself."
 
 
 12
 On March 6, 1963, appellant was notified of the decision to remove him from his job, effective March 11, 1963, and of his right to appeal from said removal.
 
 
 13
 Additional evidence shows that appellant indicated in writing on March 23 and May 10, 1962, to his employer, GSA, that he would make certain specified monthly payments to Al's Loan Service, one of appellant's creditors, which payments were never made as such. Besides issuing appellant the written warnings, official reprimand and notices of removal, representatives of GSA met personally on several occasions with appellant to discuss with him his financial obligations. Appellant apparently did make some payments on some accounts, such as a $12.00 payment to Al's Loan Service on February 6, 1963.
 
 
 14
 Appellant appealed to the Administrator of General Services from his dismissal and a hearing was held before a three-member committee on April 11, 1963. On May 1, 1963, appellant's appeal was denied by the Administrator, who had reviewed the committee's report.
 
 
 15
 On May 16, 1963, appellant was notified by the Ninth Regional Personnel Officer of the United States Civil Service Commission that since appellant had not received 30 days' advance notice of his proposed removal, as required by the Veterans' Preference Act at 5 U.S. C.A. § 863,[1] his disciplinary action was cancelled. Appellant was restored to his position and paid in full for his lost time.
 
 
 16
 On May 27, 1963, appellant was again notified in writing that he was to be removed from service, and he was told that he had a right to reply to the charges. Appellant replied in a June 3, 1963, letter, through his attorney that "* * * you cannot discipline me twice for the same things. My restoration to service has wiped out all matters which were referred to in the letters [of March 6, 1963, and May 27, 1963]". Appellant was notified on June 11, 1963, that he would be removed from service effective July 3, 1963. Acting pursuant to regulations set out in the Veterans' Preference Act, supra, f. n. 1, and in 5 CFR § 22 (1961 Rev.), the removal action was sustained on August 23, 1963, by the Ninth Civil Service Region after an appeal was filed by appellant and after a hearing was held before an Appeals Examiner of the Civil Service Commission on August 7, 1963. The Board of Appeals and Review of the Civil Service Commission in Washington, D. C., upheld the decision of the Ninth Region on October 18, 1963. The District Court action here involved followed.
 
 
 17
 Keeping in mind, as we must, that the scope of review in cases involving the removal and discipline of federal employees is very limited (see, e. g., Eberlein v. United States, 1921, 257 U. S. 82, 84, 42 S.Ct. 12, 66 L.Ed. 140; Brown v. Zuckert, 7 Cir., 1965, 349 F. 2d 461, 463), we undertake to deal with the legal points raised by the appellant herein. The general rule is that the appointment and removal of executive employees are matters of discretion left to the executive branch which are not here reviewable on the merits. See, e. g., Keim v. United States, 1900, 177 U.S. 290, 293-294, 20 S.Ct. 574, 44 L.Ed. 774; Brown v. Macy, 5 Cir., 1965, 340 F.2d 115, 116-117.
 
 Appellant's first contention is that:
 
 18
 "The order removing appellant from service is invalid because there is no showing that the `Administrative Manual' relied upon [in discharging appellant] was issued by an officer to whom authority was lawfully delegated."
 
 
 19
 While appellant did refer (1) in his complaint to the court below that appellant's dismissal was not based on any valid regulation of the Civil Service Commission or GSA, (2) in his notice of appeal to the Civil Service Commission that appellant did not violate any established GSA or Civil Service Commission rule, and (3) in his appearance before the Appeals Examiner of the Ninth Civil Service Region that the agency state some basis for the validity of the code of conduct used as regulations, this appeal is the first time appellant makes a specific challenge to the issuing authority (the Assistant Administrator for Finance and Administration) of the Administrative Manual. We note that the contention of appellees that
 
 
 20
 "* * * The reason why the record contains no evidence showing the delegation of authority from the GSA Adminstrator — who concededly has authority to prescribe regulations governing employee conduct — to the Assistant Administrator for Finance and Administration is that the latter's authority to issue the `Penalty Guide' was never questioned during the proceedings before the agency or the Civil Service Commission"
 
 
 21
 is entirely correct. We are reluctant to consider and deal with this point at this stage of the proceedings since appellant has himself not pursued it before. However, even if we were to deal with appellant's point on its merits, we are convinced that the Assistant Administrator for Finance and Administration did have the authority to issue the regulation involved. This delegation is evident from GSA Order ADM 5450.3 CHGE 72, dated May 8, 1962, which order is attached as an appendix to the appellees' brief.
 
 Appellant's second contention is that:
 
 22
 "Said order is invalid because it penalizes appellant a second time for the same offense.
 
 
 23
 "The case against appellant is res judicata by reason of the first charge and order against him."
 
 
 24
 In other words, appellant feels because he was reinstated on May 16, 1963, after having been discharged, that he could not be discharged again even though his reinstatement was due solely to the fact that he had not been given proper notice of his impending discharge as required by the Veterans' Preference Act set out in f. n. 1, supra. We do not agree.
 
 
 25
 Whether or not the concept of res judicata generally applies to administrative proceedings,[2] it clearly does not apply herein. Res judicata refers to the thing adjudicated. The adjudication at the time of both appellant's first and second removals from the government service herein was that he was guilty of the conduct charged. In other words, whether or not we grant appellant's contention, he is not benefitted since the facts never were adjudicated in his favor. His removal was postponed because of procedural fault, but this fault was corrected. Appellant, who in effect got a second chance, cannot now complain. Unlike the typical res judicata situation, appellant never prevailed on the merits. If anything, appellant's contention sounds more of "double jeopardy" rather than of res judicata. But the criminal concept of double jeopardy clearly is not applicable herein. At a minimum, appellant was not being punished twice for the same offense, for he never was punished after his first removal, having been fully reimbursed for his time lost on that occasion. This might be likened to the retrial of a criminal case where error in the first trial necessitates its being tried again. No double jeopardy results.
 
 Appellant's third contention is that:
 
 26
 "Said order is invalid because unsupported by any evidence in essential elements of the case."
 
 
 27
 The appellant was ultimately dismissed from his job because, as related to him,
 
 
 28
 "* * * of your failure to demonstrate a conscientious effort to pay just financial obligations, and to live up to arrangements agreed upon for liquidating indebtedness.
 
 
 29
 "Specifically: Al's Loan Service reported that you received a loan on December 21, 1961, with payments to be $6.00 a month. On March 21, 1962, Al's stated in a letter that you had not made a payment on this account. When you were counselled on March 23, 1962 by Mr. Todd Preston, Building Manager, you stated in writing, `Mr. Preston I will send Al $8.00 per month until pay out I will send $8.00 on the 14th of April and $8.00 each month until pay out.' On May 7, 1962, Al's again wrote stating that you still had not made any payments on this account. When you were counselled on May 10, 1962 concerning this letter, you stated in writing, `I no that I owe Al's so i will send him $5.00 May 25 and $5.00 a month until pay out.' On January 25, 1963, Al's again reported that you had never made a payment on this account.
 
 
 30
 In determining the severity of this proposed action, your past record of indebtedness has been considered."
 
 
 31
 It is appellant's contention that the loan from Al's Loan Service was not "a just financial obligation" since said loan was "usurious". Even overlooking the fact that appellant never took the trouble to obtain a legal adjudication that said debt was usurious, it is patently obvious that appellant's warnings, reprimand and dismissal were based on much more than just the debt owed to Al's Loan Service since the dismissal letter referred to "obligations" and to appellant's entire "past record of indebtedness". The debt to Al's was merely used as one illustration of said indebtedness. As already noted, some 40 separate complaints were lodged against appellant over a three-year span. Appellant, though invited to do so, never officially responded to refute the charges against him in the warnings and in the official reprimand. Certainly this court, in its narrow scope of review, cannot say that there was a total lack of evidence to support the issuance of the warnings and reprimand or to uphold the dismissal of appellant. Brown v. Zuckert, supra; Brown v. Macy, supra; Seebach v. Cullen, 9 Cir., 1964, 338 F.2d 663, 665, certiorari denied, 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268.
 
 Appellant's fourth contention is that:
 
 32
 "Said order is invalid in that it deprives appellant of his property, conserting [sic] of his means of livelihood, without due process of law, in that he has been denied the right to confront and cross-examine witnesses, and unsworn statements of unidentified declarants as well as hearsay, form the basis of the case."
 
 
 33
 The Supreme Court has indicated that due process should be utilized to protect a public employee's interest in his employment. See, e. g., Slochower v. Board of Higher Education, 1956, 350 U.S. 551, 556, 76 S.Ct. 637, 100 L.Ed. 692, rehearing denied, per curiam, 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1470; Wieman v. Updegraff, 1952, 344 U.S. 183, 191-192, 73 S.Ct. 215, 97 L.Ed. 216. However, in the instant case there is no doubt that proper agency procedures were followed and that appellant was given due process of the law. Appellant was granted two separate hearings and was at all times aware of the charges against him leading to his dismissal. He was allowed to reply to the said charges and to attempt to refute them. Appellant was allowed to call witnesses on his behalf, and, if such was his constitutional right, to confront and cross-examine every witness who appeared at the hearings. It is impossible to say that appellant did not know of the specific creditors and obligations which led to the proceedings to terminate his employment. Minimally, a listing of known creditors of appellant was sent to him in letters from GSA on February 13, 1963, March 6, 1963, and May 27, 1963.
 
 
 34
 There is no evidence of any request made by appellant to GSA or to the Civil Service Commission for permission to make use of the so-called "anonymous" letters mailed by appellant's creditors to GSA which were relied on to show the financial irresponsibility of the appellant. There is also no evidence that appellant tried and failed to procure needed witnesses for his defense or that he requested and was denied the aid of GSA and the Civil Service Commission in obtaining the presence of the said potential witnesses at the hearings. As stated by the Seventh Circuit in the very recent case of Brown v. Zuckert, supra, a case also involving a veterans' preference eligible and hearings before the Civil Service Commission under the same regulations as here involved, at pages 463-464 of 349 F.2d:
 
 
 35
 "There is no statute requiring the production of witnesses at a hearing on a government employee's removal. The basic civil service statute, 5 U. S.C. [§] 652(a) provides: `No examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer or employee directing the removal or suspension without pay.'
 
 
 36
 "The Veterans' Preference Act, 5 U.S.C. § 863, makes no reference to any right of hearing or to the cross-examination of witnesses or to the production of witnesses. However, this Act does authorize the Civil Service Commission to promulgate regulations effectuating the right of appeal. By such regulations, vetterans' preference eligibles are granted a right to present, examine and cross-examine witnesses if certain conditions are met.
 
 
 37
 "The two pertinent regulations are 5 C.F.R. § 22.603 — `Opportunity will be afforded for the introduction of evidence (including testimony and statement by the employee and his designated representative and witnesses, and the representatives of the agency and its witnesses) and for the cross-examination of witnesses.' And, 5 C.F.R., § 22.607 (as hereinbefore stated) `The Commission is not authorized to subpoena witnesses. The employee and his designated representative, and the employing agency, must make their own arrangements for the appearance of witnesses.'
 
 
 38
 "The Supreme Court in Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, held that a discharged employee must make his request for the production of witnesses in conformity with the regulations hereinbefore quoted. The Court said at page 532, 83 S.Ct. at page 404: `The request for production of the witnesses, made only at the hearing by petitioner's counsel, was neither timely nor in conformity with the applicable regulations, which contemplate that the party desiring the presence of witnesses, either for direct examination or cross-examination, shall assume the initial burden of producing them.'
 
 
 39
 "The employee would have to do something more than merely notify the agency that he desired certain witnesses to attend a hearing. As indicated in McTiernan, supra [McTiernan v. Gronouski, 2 Cir., 1964, 337 F.2d 31], at page 37, the employee should, at least, make a showing that he attempted to contact such a witness and attempted to arrange for his attendance at the hearing.
 
 
 40
 "It is, therefore, clear that it is only after the employee discharges his initial burden that he is entitled to have the agency, — here, the Air Force, attempt to have the desired witnesses produced.
 
 
 41
 "The plaintiff in the instant case failed to discharge his initial burden. * * *
 
 
 42
 "In view of the clear language of the Civil Service Commission's regulations and the uniform decisions of the courts, we think there is no substance to plaintiff's argument that he was denied the right of cross-examination at the Civil Service Commission hearing and that hence his procedural rights were violated. We think the District Court's dismissal of the action for reinstatement was warranted, and the decision of the District Court in granting defendants' motion for summary judgment was correct."
 
 
 43
 See, also, Hanifan v. United States, Ct. Cl., December 17, 1965, 354 F.2d 358, where the agency therein refused a request by the aggrieved party to produce certain witnesses who were employed by the agency. In the instant case there is not even a suggestion that appellant ever notified the agencies that he desired certain witnesses to attend the hearings, much less a showing that he attempted to contact such witnesses or attempted to arrange for their attendance at the hearings.
 
 
 44
 Two cases cited by appellant, Williams v. Zuckert, 1963, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, vacated on rehearing (remanded for further factual findings), 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136, and Bridges v. Wixon, 1945, 326 U.S. 135, at 154-156, 65 S.Ct. 1443, 89 L.Ed. 2103, do not change the instant determination. In the Williams case the discharge of a veterans' preference eligible with civil service status was upheld. The Supreme Court stated at page 532 of 371 U.S., at page 404 of 83 S.Ct.:
 
 
 45
 "Although amply notified in advance of the nature of the charges, the names of the witnesses whose affidavits had supplied the factual basis for his dismissal, and the date of the hearing, neither petitioner nor his counsel made any request, prior to the hearing, of the Air Force, of the Commission or its examiner, or of the witnesses themselves, for their appearance for cross-examination. The request for production of the witnesses, made only at the hearing by petitioner's counsel, was neither timely nor in conformity with the applicable regulations, which contemplate that the party desiring the presence of witnesses, either for direct examination or cross-examination, shall assume the initial burden of producing them."
 
 
 46
 Here, also, appellant knew the nature of the charges and was fully aware of the identity of his alleged creditors. However, he never requested GSA or the Civil Service Commission to produce said creditors as witnesses. Such a situation is even stronger than the Williams case, the result of which is itself adverse to appellant's position herein. In that part of the Wixon case cited by appellant, the Supreme Court condemns the use of unsworn statements in a deportation proceeding "which under the governing regulations are inadmissible" (326 U.S. at page 154, 65 S.Ct. at page 1452). In the instant case no such regulation was present. The record confirms that all regulations here involved were observed stringently throughout appellant's efforts to maintain his employment. Furthermore, in Wixon the unsworn and highly prejudicial statements were decisive in determining a close issue. Here, as already indicated, there was sufficient evidence, sworn and unsworn, but not misused in any way, to support the instant result. It is obvious that the Civil Service Commission by its own rules was not required to strictly follow the rules of evidence and could pass on anything that was relevant to appellant's dismissal, including the letters of complaints from appellant's creditors. (5 CFR § 22.604 (1961 Rev.)) There is nothing to prevent the admission of such evidence. Brown v. Macy, supra, at page 117 of 340 F.2d.
 
 
 47
 Appellant's fifth and final contention is that:
 
 
 48
 "Said order is further a denial of the due process in that it amounts to the enforcement of a private debt by administrative procedure and denies appellant the right to a traditional judicial proceeding, with the constitutional safeguard of procedure mentioned in Point IV supra, and moreover, the right to a trial by jury."
 
 
 49
 This is completely without merit. The GSA and Civil Service Commission actions did not enforce a private debt. Both before and after such actions appellant could have and perhaps still can challenge the legality and validity of any or all of his debts. The problem herein was that appellant did not choose to deal with these debts in a manner calculated to avoid embarrassment to GSA despite repeated warnings and opportunities to do so.
 
 
 50
 This case is in all things affirmed.
 
 
 
 Notes:
 
 
 [1]
 § 14 of the Veterans' Preference Act, 5 U.S.C.A. § 863, provides in pertinent part:
 "No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, hereinbefore referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge, suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days' advance written notice (except where there is reasonable cause to believe the employee to be guilty of a crime for which a sentence of imprisonment can be imposed), stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision: Provided, That such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted, the Civil Service Commission shall submit its findings and recommendations to the proper administrative officer and shall send copies of the same to the appellant or to his designated representative, and it shall be mandatory for such administrative officer to take such corrective action as the Commission finally recommends: * * *."
 
 
 [2]
 See 2 Davis, Administrative Law Treatise, §§ 18.01 to 18.12 (1958, as supplemented) and authorities cited therein