David R. WEINBERG, Appellant,

v.

John W. MACY, Jr., et al., Appellees.

No. 19213.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 15, 1965.

Decided Dec. 22, 1965.

Petition for Rehearing En Banc
Denied June 16, 1966.

Mr. David R. Weinberg, appellant pro se.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, and Messrs. Frank Q. Nebeker and Gil Zimmerman, Asst. U. S. Attys., were on the brief, for appellees.

Before PRETTYMAN, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge:

This is an appeal from a summary judgment rendered in a civil action for a declaratory judgment. Plaintiff-appellant Weinberg was a veteran's preference eligible civil service employee. He was discharged at Birmingham, Alabama, upon a charge of falsification of his job application. He told the District Court that, having lost his employment, he had no funds with which either to hire a lawyer or to come to Washington. He handled his interests *pro se* and submitted his case upon the papers by correspondence. His appeal is here *in forma pauperis* by our order.

The Government official defendants (appellees here) told the District Court, and told us, that under date of January 2, 1963, Weinberg was sent a notice of dismissal reciting a charge and a specification; that the Internal Revenue Service and the Civil Service Commission had found the charge and the specification established, and the discharge followed. They told the District Court, and us, that the charge was falsification of his application for federal employment and the specification was as follows:

> "Investigation has disclosed that you were charged and convicted in Jefferson County Juvenile Court, Birmingham, Alabama, on a bastardy action to which you pleaded guilty on February 2, 1960. You were sentenced to '12 months hard labor for Jefferson County,' which sentence was suspended * * *."

The Government appellees also told the court that "This same charge and specification was repeated in a later, superseding notice dated February 4, 1963." The facts as shown by the record were not as thus stated by the Government. There was a letter of January 2, 1963, but it was promptly canceled and another letter issued on February 4, 1963. The canceled letter did say Weinberg had been involved in a bastardy action, but the second letter was not the same; it said the action was for desertion and non-support of a child. There were two separate Alabama statutes in 1960 under different titles in the Code, one concerning bastardy [1] and the other desertion and non-support.[2] The two causes lay in different courts, posed different issues, and were tried under different rules. The difference is material in this controversy, as we shall indicate.

Weinberg's account, as given in an affidavit filed with his appeal to the Civil Service Commission, says that the matter originated in March, 1959, when a deputy sheriff left "a paper" at his home, requesting that he come to the sheriff's office regarding a bastardy charge by a woman who alleged that he was the father of her expected child; that he went to the sheriff's office, signed "some papers", deposited $300 in cash, and shortly thereafter engaged a lawyer; the lawyer advised him to be in "Judge Thompson's Court" on a certain day; he was there, no questions were asked him, and he was advised nothing further would occur until the baby was born; that early in 1960 the attorney advised him the matter "would be set in Judge Gibson's Court" and he should admit paternity and agree to pay $10.00 a week for support; that the lawyer told him the case had been transferred to the Juvenile Court; that he went from the Jefferson County Courthouse to the Juvenile Court and talked to "Mr. Large", who told him he had to pay $10.00 a week through the Juvenile Court, which payments he thereafter made; that he did not talk to a judge at the Juvenile Court, had no knowledge of what orders were being entered, and was never notified by anyone that he had been arrested or that any criminal charge had been made against him or that he had been sentenced to

---

1. CODE OF ALA., tit. 6, §§ 1–24 (recompiled 1958).

2. CODE OF ALA., tit. 34, §§ 89–104.

twelve months hard labor; and that he understood the entire proceedings to be of a civil nature "to have me declared the father of Miss Perkins' child and to pay toward its support." Weinberg repeated this account, with some additional details, in his memorandum to the District Court.

The Board of Appeals and Review of the Civil Service Commission held: "The Board cannot accept your contention that you did not know you had ever been arrested or convicted in the face of [the Alabama court papers]." The administrative file was attached to the pleadings in the District Court. Thus there was clearly posed a genuine issue of material fact. The record did not present a case for summary judgment.

The Government appellees say they rely "solely"[3] upon the documents relating to the Alabama proceeding. Those documents show the proceeding was not a bastardy action as the Government appellees say it was. They demonstrate that it was a proceeding for desertion and non-support, as Weinberg says he understood it was. The proceeding was clearly designed to insure support for the child involved. Indeed the warrant, the court order, and the probation bond were all instruments of the Juvenile and Domestic Relations Court, which does not have jurisdiction in bastardy actions. Appellees told the District Court, *inter alia,* that the Commission's record included the pertinent records "from the State of Alabama's bastardy proceedings against plaintiff." Those records do not show any bastardy proceedings.

This inaccuracy on the part of the Government in this phase of the case is all the more startling because in their memorandum of points and authorities in support of their motion for summary judgment they refer to the sections of the Alabama Code which deal with bastardy actions and to cases under those sections.[4] Those sections and cases conclusively demonstrate that the proceeding involved in the papers in this record was not a bastardy action. Appellees repeatedly mention bastardy actions and the Alabama court papers; they nowhere call attention to the fact that the papers were not in a bastardy action and were indeed forms used in a court which did not have jurisdiction over bastardy actions.

The materiality of the difference between a bastardy action and a charge of non-support of a child, in the context of this controversy, is in several parts. In the first place there is the stark inaccuracy reflected by the difference between the specification considered and adopted in the administrative proceedings and that presented by the Government officials to the District Court and to us. The unexplained difference either reflects carelessness or administrative haste or it lends a measure of credence to Weinberg's claim that factors other than those stated entered into his dismissal.

Secondly, the difference between the two versions of the specification may have been minute, but it was sufficient to cause the District Director of the Internal Revenue Service to withdraw one letter and substitute another.

In the third place Weinberg's claim that he was not aware he had been arrested on a criminal charge, convicted, and sentenced takes on a wholly different hue under the one charge and under the other. According to his sworn statement (which must be accepted as true for summary judgment purposes), he went to the sheriff's office in March, 1959, before the expected baby was born, and deposited a cash bond to secure his promise to support the child. If thereafter, in early 1960, he had been arrested, taken to the court of general jurisdiction, charged, convicted and sentenced on a bastardy action, he surely would have been aware of what was happening. The sole issue in a bastardy action is paternity. He never disputed paternity. If he had been subjected to a criminal

3. Question 2 of Questions Presented in Appellees' Brief.

4. CODE OF ALA., tit. 6, §§ 1, 3, 7, 13.

charge on that subject, he surely would have recognized that something was amiss. His claim that he did not know what was happening is highly implausible if bastardy were the action to which he was subjected. On the other hand, if before the baby was born he had posted security for its support, and after the baby's birth he went to the Juvenile and Domestic Relations Court, talked to an official (not the judge), reaffirmed his undertaking to support the child, and posted a more formal bond to that effect, his claim that he thought this was a civil matter is wholly plausible. It is common knowledge that in those courts an uncontested arrangement for the support of a child by its admitted father is handled with a minimum of fanfare and panoply. Indeed, when no contest is being adjudicated, the court's business of entering orders is often conducted in such manner, such terms, and such tones of voice that knowledgeable onlookers are not always certain as to what is transpiring. The realities appear only when the papers are examined. It is difficult to believe that Weinberg, having made arrangements, with security, before the child was born, to support it, would consciously have pleaded guilty to a criminal charge of willfully failing to support it. Our wonderment goes a step further. In the face of documentary evidence in the records of the sheriff's office (*i. e.*, the bond filed in the spring of 1959), would the Juvenile and Domestic Relations Court of Jefferson County have found Weinberg guilty beyond a reasonable doubt of willfully failing to support the child, if it had been fully and accurately apprised of the facts?

Generally and in most jurisdictions, desertion and non-support proceedings are civil, are in a juvenile or domestic relations court, and terminate in an arrangement for payments in support. Generally speaking, a "bastardy" proceeding involves a contested paternity issue and in the lay mind carries unpleasant connotations. No such issue was involved in the case at bar.

Our notice is attracted to a provision of the Alabama Code[5] which provides that *after* a conviction or plea of guilty on a charge of non-support, and *after* sentence and suspension of sentence, the court may require payments for the support of the child. A case annotated to that provision[6] indicates that such payments can be required *only after* conviction or plea, sentence, etc. If that be correct, it may well be that plea and sentence have become a meaningless routine in the process of issuing court orders for child support. And, if so, the custom would lend support to Weinberg's understanding of what occurred. The matter should be made clear to the trial court.

■■ The nub of the controversy is whether Weinberg knew or should have known that the proceedings in which he was involved constituted an arrest, charge, or holding for violation of law. We are not able to find in the papers before us a reference to the law or regulation under which Weinberg was dismissed. As we said in Pelicone v. Hodges,[7] "The Government *seems* to base this charge on 5 C.F.R. § 2.106(a) (4) * * *." (Emphasis supplied.) That regulation, as we there pointed out, permits disqualification for intentional false statements. At any rate the burden from the beginning was upon the Government in the discharge proceeding, and that burden must necessarily be to establish intentional falsification. And Weinberg's claim that he failed to realize the full import of the paper formalities is to be evaluated in the light of reasonableness in the context of events. He is not foreclosed by the bare records of the Alabama court.

■ If the Government appellees are of a mind to pursue this matter, it is to be expected that they will correct the inaccuracies in their pleadings and also

5. Tit. 34, § 98.

6. Law v. State, 238 Ala. 428, 431, 191 So. 803, 806 (1939).

7. 116 U.S.App.D.C. 32, 33, 320 F.2d 754, 755 (1963).

**820**

that they will make an earnest effort to present, or cause to be presented, for the benefit of the trial court, full evidence as to exactly what transpired in respect to Weinberg in the Alabama proceedings. The defendant-appellees' motion for a protective order will be denied.[8]   No question of national security is involved. Plaintiff-appellant's motions in aid of discovery under the Rules of Civil Procedure will be granted, so long as they do not impinge upon executive privilege.

■   We think the interests of justice require that this appellant have counsel. Therefore, coincident with the promulgation of this opinion, and in view of the fact that further proceedings may ensue in this court, we shall appoint counsel for him, subject of course to his undoubted right to secure counsel of his own choice or to continue to represent himself.

The summary judgment of the District Court is vacated and the case remanded for further proceedings not inconsistent with this opinion.

So ordered.

---

8. Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), vacating 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed. 2d 486 (1963) ; and see also Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).