**Loren L. MARSDEN, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 4–74–Civ. 426.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 17, 1974.

Paul A. Skjervold, Minneapolis, Minn., for plaintiff.

Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., R. Richard Froelke, Regional Labor Counsel, Labor Law Div., U. S. Postal Service, Chicago, Ill., for defendant.

## MEMORANDUM

LARSON, District Judge.

This motion raises questions concerning the due process rights available to Postal Service career employees under the suspension and discharge procedures of the United States Postal Service.

The plaintiff Loren L. Marsden was appointed Postmaster for the City of St. James, Minnestota, on April 14, 1961, and served in that position continuously until May 29, 1974. During the month of March 1974 Marsden, as Postmaster, entered into a transaction with the South Central Electric Association to redeem certain old postal stock owned by the local REA Association. Marsden, along with several employees of the St. James Post Office, counted this stock and determined its value. Marsden proceeded to procure 7,000 8-cent postcards, 6 ten dollar coils of 10-cent stamps and $5.38 cash, and took them to the Association's office on March 19, 1974. Mr. John A. Jackson, office manager of the Association, told Marsden that the Association did not use stamps. Therefore, Marsden decided he would redeem these stamps and deliver $60.00 in cash to the Association.

Marsden sold these 6 ten dollar coils of 10-cent stamps to the clerks in the Post Office at St. James during the last two weeks of March 1974. This cash was left by Marsden in his desk drawer at the Post Office until discovered by two Postal Inspectors making a routine audit on May 21, 1974. Marsden asserts by affidavit that this money was not delivered to its rightful owner, the Association, through inadvertence and because of poor health. The Postal Service contends that Marsden converted the value of these stamps for his personal use. The $60.00 cash was subsequently delivered to the Association office on June 3, 1974.

On Tuesday, May 28, 1974, J. Earl Holmes, the SCF Manager-Postmaster of Mankato, Minnesota, issued a Notice of Placement in Off-Duty Status to Marsden. This notice is set forth in its entirety in the footnote below.[1] This notice was issued under the emergency procedure section of the Labor-Management Relations: Grievance and Appeal Procedure § 444.33, and suspended Marsden from his position effective 24 hours after receipt of the notice.

On June 8, 1974, Holmes issued an advance written notice proposing that Marsden be removed from the Postal Service. This notice stated:

"This action is being taken because there is reasonable cause to believe that you have committed a crime for which a sentence of imprisonment may be imposed."

This notice also informed Marsden of his right to review the material relied on to support his dismissal and of his right to answer this notice within five days.

On June 21, 1974, Marsden and his counsel appeared before Holmes and responded to the allegations made in the letter of June 8. Thereafter Holmes issued a final decision letter on July 3, 1974, terminating Marsden's employment with the Postal Service as of July 8, 1974. This decision letter states:

"I find, however, that the charge as stated in the notice of June 8, 1974,

1. Is fully supported by the evidence and warrants your removal. This action is being taken to promote efficiency of the Service."

This letter also gave notice of Marsden's right to appeal and the procedures that should be followed in making an appeal.

Marsden filed an appeal with the Minneapolis, St. Paul District Manager on July 11, 1974. He also, through counsel, offered to accept a 14 or 21 day suspension without pay upon his reinstatement as Postmaster. This offer of settlement was apparently motivated by Holmes' reference to settlement in his final decision letter of July 3, 1974. Evidence presently before the Court does not indicate any Postal Service response to this offer.

An appeal hearing was scheduled for August 2, 1974. However, it appears there was a heated exchange between the Postal Service and Marsden's counsel over whether a Court Reporter brought by Marsden's counsel would be allowed

1. "NOTICE OF PLACEMENT IN OFF-DUTY STATUS

Date: Tuesday, May 28, 1974

Time: 4:20 p.m.—

Installation: St. James MN 56081

Name: Loren L. Marsden

Job Title: Postmaster                    SSN: 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

Reason for placement in off-duty status:
On May 21, 22 and 23, 1974, a financial audit was conducted at the Saint James Post Office by the Postal Inspection Service. It was disclosed through a check of post office records and inquiry of the South Central Electric Association, approximately $60.00 discrepancy existed between the amount of redeemed postage received from the aforementioned customer on/or about March 14, 1974, and the amount of postage stock given in exchange by you on/or about March 19, 1974.
This action is being taken because it appears that your retention in an active duty status may result in damage to Government property or may be detrimental to the interest of the Government or injurious to you, your fellow workers or the general public.
Your placement in off-duty status will commence twenty-four (24) hours from the receipt of this notice and continue until advised.
/s/ J. Earl Holmes
J. Earl Holmes
SCF Manager—Postmaster"

to record the hearing on that day and the hearing was postponed.

A subsequent hearing was scheduled for September 12, 1974, at which time the Postal Service granted Marsden's requests to have an official Court Reporter present, to have the hearing open to the public, and to have a new hearing officer appointed. On September 4, 1974, Marsden's counsel informed the Postal Service that he had filed an action in this Court and that there was no need to go forward with the hearing set for September 12, 1974.

This Court has jurisdiction in this case under 5 U.S.C. §§ 701, 706 for the limited purpose of ascertaining whether the notice afforded the plaintiff of his suspension and subsequent dismissal from the Postal Service was sufficient under the Postal Service's Labor-Management Relations: Grievance and Appeal Procedure, Part 444; and whether those procedures substantially afford a petitioner the statutory guarantees articulated in 5 U.S.C. §§ 1302, 3301, 3302, and 7701 and the procedures set out in 5 U.S.C. § 7512.[2]

The Court finds that the plaintiff was not afforded a notice of an opportunity to respond to the charges made against him in the Notice of Placement in Off-Duty Status of May 28, 1974. As an additional and alternative ground for ordering plaintiff's reinstatement, pending further agency consideration of the facts surrounding this controversy, the Court finds the use of the 24 hour notice procedure to suspend a career and veterans preference employee on the grounds that there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed violates the statu-

tory guarantees of 5 C.F.R. § 752 and 5 U.S.C. § 7512. Because of the violation of these statutory guarantees the Court finds it unnecessary to reach the constitutional issues raised in this case.

The normal procedure used in taking adverse action against a preference eligible employee is set out in 5 U.S.C. § 7512 and 5 C.F.R. § 752. The Postal Service procedure is set out in its Labor-Management Relations: Grievance and Appeal Procedure, Part 444 (hereinafter referred to as the Postal Adverse Action Procedure), which is substantially based upon the above cited statute and regulations. However, it is necessary to point out that the Postal Adverse Action Procedure covers all career employees in the Postal Executive Salary Schedule while 5 U.S.C. § 7512 is applicable only to preference eligible employees. Marsden, as a career employee, is entitled to the guarantees of the Postal Adverse Action Procedure and as a veteran is entitled to the guarantees of 5 U.S.C. § 7512 and 5 C.F.R. § 752.

All three of these regulations provide that an employee against whom adverse action is proposed is entitled to at least 30 days advance written notice, a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of his answer, and a notice of an adverse decision. The exception to this minimum of 30 days advance notice is provided:

" . . . when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, stating any and all reasons, specifically and in detail, for the proposed action;" 5 U.S.C. § 7512(b)(1).

\*　　\*　　\*　　\*　　\*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

\*　　\*　　\*　　\*　　\*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" ·

---

2. 5 U.S.C. § 706 states in its pertinent sections:

" § 706. *Scope of review*

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

The Code of Federal Regulations, 5 C.F.R. § 752.202(c)(2), elaborates upon this statutory language. It states under its exception to notice period and opportunity to prepare answer:

"When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the agency is not required to give the employee the full 30 days' advance written notice, but shall give him such less number of days advance notice and opportunity to answer as under the circumstances is reasonable and can be justified."

This section of the Code of Federal Regulations also provides for a suspension during the notice period for emergency cases, 5 C.F.R. § 752.202(e). "Emergency" cases are defined in 5 C.F.R. § 752.202(d):

"When circumstances are such that the retention of an employee in an active duty status in his position may result in damages to Government property or may be detrimental to the interests of the Government or injurious to the employee's fellow workers, or the general public, the agency may temporarily assign him to duties in which the conditions will not exist or place him on leave with his consent."

The suspension during the notice period for "emergency" cases must be preceded by a "written notice at least 24 hours in advance of the effective date of the suspension, . . . ." 5 C.F.R. § 752.-202(e)(3).

The procedures detailed in the Postal Adverse Action Procedure further reduce the employee's notice period and opportunity to respond:

"e. Exception.—When there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment may be imposed, the advance notice requirement shall be reduced to 24 hours. The employee shall have the opportunity to answer the letter of proposed action within that 24-hour

period. At the expiration of the 24-hour period, a letter of decision shall be issued forthwith. Thereafter the employee shall remain on the rolls in a non-pay status until a final administrative decision is made regarding his employment status with the Postal Service." Part 444.32(e).

The Postal Service has an additional procedure for use in emergency situations:

".33 Emergency Procedure.

An employee may immediately be placed in an off-duty status (without pay) by the employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol); or failure to observe safety rules and regulations; or in cases where retaining the employee on duty may result in damage to Postal Service property, loss of mail or funds; or where the employee may be injurious to himself or others. The employee shall remain on the rolls in a non-pay status until disposition of his case. If it is proposed to suspend an employee for more than 30 days or discharge him, the emergency action taken under this subsection may be made the subject of a grievance." Part 444.33.

In the present case, the Postal Service asserts in its brief that it properly applied this Emergency Procedure against the plaintiff in the Notice of Placement in Off-Duty Status letter of May 28, 1974. (See footnote 1). The Postal Service further asserts that this Emergency Procedure is consistent with the guarantees expressed in 5 C.F.R. § 752.-202(e)(3).

▄▄▄ It appears that the Postal Service utilized aspects of both the Emergency Procedure, 444.33, and the 24 hour notice procedure, 444.33(e), in this case. The Court first finds that the use of either of these two procedures, whether separately or in combination, requires, under 5 U.S.C. § 7512 and 5 C.F.R. § 752, not only a notice to the employee of why he is being suspended

**334**

or discharged, which was provided plaintiff in this case; but also notice of an opportunity to respond to these charges, including an explanation of the period of time to answer, the procedure to follow in answering, and to whom the answer should be made—guarantees which are clearly lacking in the Notice of Placement in Off-Duty Status letter of May 28, 1974. These guarantees are clearly expressed in the language of 5 U.S.C. § 7512 and 5 C.F.R. § 752 and are essential and fundamental guarantees.

Marsden in this case was entitled to notification of an opportunity to respond and an explanation of the proper procedures to be followed in answering these charges. Instead, he received, in the May 28 letter, a flat pronouncement that he was indeed suspended and that the action would commence in 24 hours.

■ As a second ground for this Court's Order to reinstate Marsden pending further agency considerations of the facts surrounding this controversy, the Court finds the exception provision 444.32(e), which allows the advance notice requirement to be reduced to 24 hours when there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment may be imposed, as unacceptable when viewed in light of the language of 5 U.S.C. § 7512 and 5 C.F.R. § 752.202(c)(2). 5 C.F.R. § 752.202(c)(2), previously set forth, allows a reduction of the minimum of 30 days notice when adverse action is brought against an employee when there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment may be imposed to "such less number of days advance notice and opportunity to answer as under the circumstances is reasonable and can be justified." *Ibid.*

■ In this case there is no evidence to show that criminal proceeding in any form has been brought against Marsden for the alleged conversion of $60.00. The Court finds that when there is no present criminal proceeding pending against an employee by the Federal Government, that the 24 hour notice is inappropriate. The Court recognizees that the notice period of 30 days may be reduced under the language of 5 C.F.R. § 752.202(e)(2) but finds the 24 hour advance notice as set forth in the Postal Adverse Action Proceeding inadequate.

■■ The Court today does not find that a person cannot be dismissed from Federal employment on the grounds that there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment may be imposed when there is no criminal conviction or even when the employee is acquitted of the criminal charge. *Cf.* Taylor v. U. S. Civil Service Commission, 374 F.2d 466 (9th Cir. 1967); Finfer v. Caplin, 344 F.2d 38 (2nd Cir. 1965); *but see* Embrey v. Hampton, 470 F.2d 146 (4th Cir. 1972). Indeed, it is clearly within the hiring and firing power of the Postal Service to determine its own standards as to the qualifications of its employees. 39 U.S.C. § 1001. But the Court does find that an agency's presumption of criminal conduct does not warrant neglect of the statutory guarantees of sufficient notice and an opportunity to respond to those charges. Twenty-four hour notice is not sufficient under the guarantees set forth in 5 C.F.R. § 752. The Government has the right under these provisions to temporarily assign the charged employee to other duties or to suspend the employee with pay during the reduced notice period. 5 C. F.R. § 752.202(d). However, the Government is not entitled to suspend the employee with an insufficient 24 hour notice without pay as was done in the case presently before the Court.

The Courts have expended considerable judicial resources assuring that these statutory procedural guarantees are followed. In Fitzgerald v. Hampton, 152 U.S.App.D.C. 1, 467 F.2d 755 (1972), and Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969), the Court ruled that agencies conducting dismissal hearings must carefully comply with the statutory guarantees of 5 U.S.C. § 7512 concerning hearing procedures. In Al-

bert v. United States, 437 F.2d 976, 194 Ct.Cl. 95 (1971), and Burkett v. United States, 402 F.2d 1002, 185 Ct.Cl. 631 (1969), the Courts addressed the need for agencies to detail specifically the charges made against employees. In Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965), the Court required the agency to afford the petitioner his procedural guarantees throughout the administrative appeal process.

Concerning the issue of adhering to the notice period guaranteed by statute, the Court in Stringer v. United States, 90 F.Supp. 375, 117 Ct.Cl. 30 (1950), held the 30 full days notice meant 30 full days and that 29 days was not sufficient notice. Petitioner in *Stringer* was notified of his demotion on August 17, 1944, to become effective September 16, 1944. The petitioner as a veteran was entitled to a full 30 days notice under 5 U.S.C. § 863, predecessor to 5 U.S.C. § 7512. The Court found that the petitioner was not given the required 30 full days notice in advance of his demotion and that it made no difference that the petitioner knew of his proposed demotion before August 17.

The Court in *Stringer* did not rule that the Chief of Engineers lacked the power to demote Stringer, nor did the Court rule in favor of Stringer's claim that the notice of August 17 failed to state the specific reasons for his demotion. The Court stated:

"The Congress is the policy-making branch of our government. It said plaintiff should have at least thirty days' notice. The War Department gave him twenty-nine. Why? We have no doubt the official thought he was allowing exactly thirty days. But in his efforts to give not an ounce more than necessary, he sliced the ham too thin." *Ibid.* at 381.

Other Courts have demanded strict adherence to the full 30 days notice. Fass v. Gray, 91 U.S.App.D.C. 28, 197 F.2d 587, 592 (1952). In Flanagan v. Young, 97 U.S.App.D.C. 119, 228 F.2d 466 (1955), the Court held that a veteran preference employee charged with illegal political activity under the Hatch Act, 5 U.S.C. §§ 118i, 118*l*, was entitled to all the statutory procedural guarantees of 5 U.S.C. § 863 (Predecessor of 5 U.S.C. § 7512) instead of the more limited guarantees under the Hatch Act. The petitioner was afforded only a 15 day notice and a more limited hearing of the charges made against him under the Hatch Act. The Court of Appeals reversed a lower Court decision denying the petitioner's request and stated that the petitioner was entitled to his full 30 days notice and full opportunity for a complete hearing as was his statutory right under 5 U.S.C. § 863.

Inherent in the Court's review of an agency's action is its recognition of the doctrine of exhaustion of administrative remedies. This Court both recognizes and respects the appropriateness of the administrative process in determining the facts surrounding this controversy, reserving the right to a limited judicial review after final agency determination of those facts. However, the Court has both jurisdiction and a duty to determine the narrow and strictly legal issue presented to it at this time.

In Fitzgerald v. Hampton, 152 U.S. App.D.C. 1, 467 F.2d 755 (1972), Fitzgerald sought judicial review of the procedures followed by the Civil Service Commission upon his separation from employment. Fitzgerald, as is the plaintiff in the present case, was a veteran and therefore entitled to certain Civil Service benefits afforded to "preference eligibles" under 5 U.S.C. § 2108 and certain procedural guarantees articulated in 5 U.S.C. § 7512. Fitzgerald sought an open hearing at which time the reasons for his separation would be aired.

The Court in *Fitzgerald* upheld the lower Court's decision that Fitzgerald was entitled to an open hearing and held that the doctrine of exhaustion of administrative remedies did not bar the District Court from determining Fitz-

gerald's prayer for relief. The Court stated:

"Clearly Congress intended to give preference eligible employees rights which would assure them of additional security in their public employment not enjoyed by unprotected federal employees and to insure them against unreasonable, arbitrary and capricious governmental intervention." *Ibid* at 762.

In determining that Fitzgerald did not have to exhaust his administrative remedies before seeking judicial review, the Court quoted from Judge Tamm's opinion in Sterling Drug, Inc. v. Federal Trade Commission, 146 U.S.App.D.C. 237, 249, 450 F.2d 698, 710 (1971):

"[T]he courts appear to have formulated the general rule that a party may bypass established avenues for review within the agency only where the issue in question cannot be raised from a later order of the agency, Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970); Elmo Division of Drive-X Co. v. Dixon, 121 U.S. App.D.C. 113, 348 F.2d 342 (1965), or where the agency has very clearly violated an important constitutional or statutory right. Amos Treat and Co. v. SEC, 113 U.S.App.D.C. 100, 306 F. 2d 260 (1962)." 467 F.2d 755, at 768.

In Lodge 1858, American Federation of Government Employees v. Paine, 141 U.S.App.D.C. 152, 436 F.2d 882, 896 (1970), the Court said in considering the doctrine of exhaustion of administrative remedies:

"Resort to the courts must ordinarily be postponed until administrative remedies available for rectification of the errors complained of have been exhausted. . . . On the other hand, the exhaustion requirement contemplates an efficacious administrative remedy, and does not obtain when it is plain that any effort to meet it would come to no more than an exercise in futility."

The Eighth Circuit in Seven-Up Company v. Federal Trade Commission, 478 F.2d 755, 757 (8th Cir. 1973), a recent decision concerning the appropriateness of judicial review before final agency action stated:

"The statutory provisions for review, however, have not been held to preclude district court review under *all* circumstances. [Citations omitted.] It has been held that district courts have jurisdiction to grant relief during agency proceedings which are not yet final in certain specific instances. These include (1) where the agency has acted in excess of its delegated powers or contrary to a specific statutory mandate. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)".

The Court in Taylor v. Macy, 252 F. Supp. 1021 (S.D.Cal.1966), stated:

" . . . in removal cases there are two grounds on which the discretionary decision of an executive may be reviewed; the removal must comply with the procedure set out in the statutes and the decision to remove must not be arbitrary or capricious, Mc-Tiernan v. Gronouski, 337 F.2d 31 (2nd Cir. 1964)."

The Postal Service cites Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L. Ed.2d 166 (1974), asserting that it bars Marsden's request for relief. In *Sampson*, a probationary employee filed an action with the District Court seeking a temporary injunction against her dismissal pending an administrative appeal to the Civil Service Commission. Murray sought judicial review over the apparent failure of the government agency to follow the appropriate procedures in dismissing her. The District Court granted the temporary relief requested and the Court of Appeals affirmed, rejecting the Government's contention that the District Court had no authority to grant temporary injunctive relief in this class of cases.

The Supreme Court reversed, stating that while the District Court is not totally without authority to grant interim injunctive relief to a discharged govern-

ment employee, in this case the relief was not proper. The Court stated:

"The authority of the District Court to review agency action under Service v. Dulles, supra, [354 U.S. 363, 77 S. Ct. 1152, 1 L.Ed.2d 1403 (1957)] does not come into play until it may be authoritatively said that the administrative decision to discharge an employee does in fact fail to conform to applicable regulations (footnote omitted)." 415 U.S. at 74, 94 S.Ct. p. 945.

*Sampson* can be distinguished from the case at bar in several ways. First, the petitioner in *Sampson* was a probationary employee while plaintiff Marsden is a veteran and thereby a "preference eligible" employee. The Supreme Court in *Sampson* observed:

"The procedural protections which the regulations accord to most dismissed probationary employees are limited." *Ibid.* at 64, 94 S.Ct. at 941.

and recognized the addition protections afforded a "preference eligible" employee:

"We are dealing in this case not with a permanent Government employee, a class for which Congress has specified substantive and procedural protections, but with a probationary employee, a class which Congress has specifically recognized as entitled to less comprehensive procedures." *Ibid.* at 80–81, 94 S.Ct. at 948.

*Sampson* can also be distinguished on another ground. One of the principal issues raised in *Sampson* was for what reason Murray was dismissed. This is a factual issue that can be resolved adequately in many cases by the administrative fact finding bodies. The issue in the present case is not a factual one but a legal one. It is apparent from all the evidence before the Court that Marsden was dismissed from the Postal Service for his conduct involving the redemption of stamps belonging to the local REA Association. The Court makes no ruling today upon that factual issue.

What it does decide is whether the procedures utilized by the Postal Service were proper. That is a legal issue which is fundamentally a duty of the judiciary to resolve.