Loren L. MARSDEN, Plaintiff,

v.

The UNITED STATES of America et al., Defendants.

No. 4–75–Civ. 312.

United States District Court,
D. Minnesota,
Fourth Division.

March 18, 1976.

Paul A. Skjervold, Minneapolis, Minn., for plaintiff; Ellen Dresselhuis, Minneapolis, Minn., of counsel.

Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM DECISION

LARSON, District Judge.

Plaintiff brings this action to review and set aside his dismissal as Postmaster of St. James, Minnesota. Plaintiff seeks reinstatement, back pay, and alternatively a new termination hearing wherein he may be provided with additional information in the possession of the Postal Service. Plaintiff alleges that his dismissal was arbitrary and capricious and that the Postal Service is guilty of procedural error.

Plaintiff, a veterans preference eligible employee, served continuously as Postmaster at St. James from 1961 until his initial removal in July 1974. This removal followed an investigation of alleged misappropriation of $60 in postal stock in connection with the redemption of such stock by the South Central Electric Association (SCEA) in March 1974. Because of procedural improprieties attending the initial removal, this Court set aside that removal in *Marsden v. United States Postal Service,* 390

F.Supp. 329 (D.Minn.1974). In compliance with the Court's Order, the Postal Service retroactively reinstated plaintiff to his position as postmaster in November 1974 but placed plaintiff on administrative leave.

A separate removal proceeding based on the same misappropriation underlying the initial action was initiated on November 29, 1974, pursuant to advanced written notice directed to plaintiff. Plaintiff was informed that the materials upon which the notice was based would be made available for his inspection and that he would be given a reasonable time within which to reply. After reviewing these materials plaintiff submitted written and oral responses, the oral response being before a Mr. Platt.[1] On January 24, 1975, John Schufman, District Director, St. Paul, Minnesota, issued his written determination that the charge of misappropriation was supported by the evidence and was sufficient to justify removal. The removal was effective January 31, 1975, but plaintiff was retained on the agency's rolls in a non-duty status pending further administrative disposition.

Plaintiff pursued his administrative appeal to the Civil Service Commission. An extensive hearing was conducted at St. James, Minnesota, on April 16, 1975, at which both plaintiff and the Postal Service were represented. On May 28, 1975, the Federal Employee Appeals Authority of the United States Civil Service Commission, after a careful and thorough review of the evidence and the arguments of counsel, affirmed the removal of plaintiff.

On July 3, 1975, plaintiff initiated the present action, naming the United States of America as the sole defendant. Subsequently various motions were brought on for hearing, including a motion by the United States for dismissal for want of subject matter jurisdiction. Because the questions of sovereign immunity underlying this motion are substantially complex and difficult, and because plaintiff's primary complaint is with the Postal Service as to which jurisdiction is proper, by its Order of October 24, 1975, this Court joined the Postal Service as a defendant. *Cf., Skinner v. United States Postal Service,* No. 75–136 A (N.D. Ohio, Nov. 3, 1975) at Slip Op. 5–6. Presently before the Court are a variety of motions, including the motions of all parties for summary judgment.

## I. *MOTION OF THE UNITED STATES POSTAL SERVICE FOR SUMMARY JUDGMENT.*

In its Memorandum attached to the October 24, 1975, Order, this Court indicated its belief that jurisdiction over the Postal Service is proper pursuant to 39 U.S.C. §§ 401(1) and 409(a) and 28 U.S.C. § 1339. *See, City of Minneapolis v. Lincoln Loan, et al.,* No. 4–74–Civil 375 (D.Minn., Nov. 29, 1974). While the Postal Service disputes the above ground for subject matter jurisdiction, the Postal Service notes that this Court has subject matter jurisdiction to review the removal of a veterans preference eligible employee under 39 U.S.C. §§ 409(a) and 1005(a)(2), and 5 U.S.C. §§ 7501, 7512 and 7701. The Court concludes that the admitted ground of subject matter jurisdiction is proper and that in any event the scope of review under the contested basis for jurisdiction would be no greater than that under § 1005(a)(2) and §§ 7501, 7512, and 7701. While the Court does not retreat from its reasoning in *Lincoln Loan, supra,* it is sufficient to review plaintiff's removal solely pursuant to the admitted grounds for subject matter jurisdiction.

■ Historically, the scope of judicial review of the merits of the removal of

---

1. Plaintiff argued to the Civil Service Commission that Mr. Platt's hearing the personal reply was a procedural error, in that it was Mr. Schufman rather than Mr. Platt who made the ultimate removal determination. The Commission rejected this contention, noting that there was no evidence that Mr. Platt did not have authority to *recommend* what the final decision should be. 5 C.F.R. § 752.202(b). Plaintiff has not renewed this procedural attack in this Court.

employees of executive departments has been minimal:

". . . [T]he scope of review in cases involving the removal and discipline of federal employees is very limited . . . . The *general* rule is that the appointment and removal of executive employees are matters of discretion left to the executive branch which are not here reviewable on the merits." *Jenkins v. Macy,* 357 F.2d 62, 66 (8th Cir. 1966) (emphasis supplied).

This general rule has been somewhat modified and relaxed in recent years, *Polcover v. Secretary of the Treasury,* 155 U.S.App.D.C. 338, 477 F.2d 1223, 1225–26 (1973) (Tamm, J.) *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973), and it seems to be well established that some limited review of the merits of removals is now available in Federal courts. *Id.,* 477 F.2d at 1226 (tests are framed in terms of "rational basis," "arbitrary and capricious" and "substantial evidence"); *McClendon v. Blount,* 452 F.2d 381, 382 (7th Cir. 1971) (" 'arbitrary, capricious or not supported by substantial evidence' "); *Harvey v. Nunlist,* 499 F.2d 335, 336 (5th Cir. 1974) (same); *Wood v. United States Post Office Department,* 472 F.2d 96, 99 (7th Cir. 1973) (arbitrary or capricious, *i. e.,* " 'not supportable on any rational basis' ") *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973); *McGhee v. Johnson,* 420 F.2d 445, 447 (10th Cir. 1969) (arbitrary, capricious or an abuse of discretion); *Marsden v. United States Postal Service, supra,* 390 F.Supp. at 335 ("a limited judicial review"). As the above cases demonstrate, courts generally have not been called upon to state the precise verbal formulation under which review should proceed. Instead, a variety of standards for review have been mentioned, largely because the agency action has been supportable under any test. Although this Court believes that the agency action in the present case is likewise valid under any definition of the proper scope of judicial review, some definition of the precise standard is in order. In view of the

wide discretion which must be accorded executive departments in their dealings with employees, *Jenkins v. Macy, supra; Arnett v. Kennedy,* 416 U.S. 134, 152, 168, 94 S.Ct. 1633, 1643–1651, 40 L.Ed.2d 15, 32–41 (1974), this Court finds that the restrictive "arbitrary and capricious" and "rational basis" standards define the appropriate scope of review of the merits. *Wood v. United States Post Office Department, supra,* 472 F.2d at 99. As all the above cited cases indicate, the Court of course has jurisdiction to assure that proper procedures are followed in the course of an employee discharge.

▮ The complaint is this case alleges that plaintiff's removal was arbitrary and capricious in that (1) punitive rather than corrective action was taken and (2) the penalty imposed was harsh and excessive and further alleges procedural irregularity concerning nondisclosure of an investigative report which plaintiff claims was part of the basis for the notice of proposed removal. The Commission's finding that plaintiff misappropriated $60 of postal stock has not been challenged directly. Nonetheless, because plaintiff in the complaint characterizes this misappropriation as a "late delivery," and because at the hearings herein plaintiff has dwelt upon the factual underpinnings for the Commission's finding, the Court has examined that finding. The evidence overwhelmingly supports the Commission's determination that, although plaintiff did not intend permanently to deprive the true owner of the $60 in question, he did improperly turn those funds to his own use and was guilty of noncriminal misconduct correctly characterized as misappropriation. In reaching this conclusion the Commission demonstrated a sensitivity to all the exculpatory evidence produced by plaintiff. The Commission's finding followed a careful weighing of conflicting evidence and was based in large part on determinations of credibility resting on the absence of bias or interest by most witnesses and on the shifting positions taken by plaintiff. There is no basis whatsoever for this Court to dispute or disturb the

Commission's finding of serious employee misconduct. *Cf.*, 39 C.F.R. § 232.3(y).

A. *Arbitrary and Capricious Action.*

■ Plaintiff's allegations of arbitrary and capricious action (Counts II and III) touch upon a core area of executive discretion. Employee misconduct having been established, the governmental employer must have the widest possible latitude in determining for itself what corrective or disciplinary measures are necessary.

■ Plaintiff complains generally of the employer's choice of punitive rather than corrective action (Count III). Notwithstanding the Postal Service's Policy on Discipline, which exhorts that the overriding consideration should be to take corrective rather than punitive action, the decision to punish was not arbitrary. This is not a case of employee inefficiency of personality clashes between an employee and his coworkers or supervisors, or of similar difficulties where corrective action would be clearly appropriate. This case involves serious misconduct by an official in a position of influence and real importance in whom must be lodged the trust and confidence not only of his employer but also of the citizens whom he serves. Moreover, the actions of which plaintiff complains in Count III are the *initial* steps taken by the Postal Service to investigate and document the misappropriation. It is certainly neither arbitrary nor capricious for a governmental employer, upon being apprised of facts indicating serious misconduct by an employee in plaintiff's position, to investigate those facts rather than immediately confronting the employee. The employer has a legitimate interest in ascertaining at the outset the nature and scope of possible wrongdoing, and the Postal Service's investigation of plaintiff was proper.

Not only were investigation and punitive action justifiable as general matters, but the degree of punishment ultimately imposed—dismissal—is not so excessive and harsh under the circumstances as to amount to arbitrary and capricious action (Count II). The hand of a postal employee lies on a vital mechanism of communication and commerce into which individuals and industry place personally sensitive and economically valuable items on a daily basis. The Postal Service is entitled to expect its employees to discharge their duties in a manner free from the taint of wrongdoing in relation to their public trust and may rationally conclude that the efficiency of the service requires strong action whenever serious misconduct is found. Dismissal in cases similar to this is apparently a long-standing policy of the Postal Service, *Skinner v. United States Postal Service, supra,* Slip Op. at 9–10, and the removal in the present case is not substantially different from terminations which have been upheld by other Courts. *Id.* (theft of two postage stamps; veterans preference career employee); *Harvey v. Nunlist, supra* (falsification of report concerning $120; employee had an unblemished record of 19 years); *Wood v. United States Post Office Department, supra* (falsification of time records concerning a total of 4.84 hours; supervisory employee); and *Taffel v. Hampton,* 463 F.2d 251 (5th Cir. 1972) (alleged theft of $100.97 saw unrelated to activities as a postal employee). Dismissal of a Postmaster occasioned by serious and substantial misconduct in the line of duty is unquestionably not arbitrary. While the Court recognizes that plaintiff may have been under medication, may not have had any motive for the misappropriation, and may not have intended to retain the $60 permanently, these matters were fully considered by the Civil Service Commission, which found removal to be appropriate. This Court does not sit as a "super Civil Service Commission," *Sexton v. Kennedy,* 523 F.2d 1311, 1314 (6th Cir. 1975), and in any event the Court agrees that plaintiff's removal was not arbitrary or capricious or unlawful.

B. *Procedural Violation.*

■ The alleged procedural irregularity set forth in Count I concerns the dis-

closure of all materials upon which the proposed adverse action is based, as required by 5 C.F.R. § 752.202(a)(2):

"... [T]he material on which the notice is based and which is relied on to support the reasons in that notice, including statements of witnesses, documents, and investigative reports or extracts therefrom, shall be assembled and made available to the employee for his review. The notice shall inform the employee where he may review that material."

The controversy centers around a Postal Inspection Service report developed in the course of the initial investigation at St. James by Postal Inspector Dash and dated May 1, 1974 (hereinafter the "Dash Form 2029"). At the hearing before the Civil Service Commission the existence of the Dash Form 2029 was first discovered. It is undisputed that the Form was not included in the materials which were made available for plaintiff's inspection pursuant to § 752.-202(a)(2). The Postal Service refused to disclose the Dash Form 2029 at the Civil Service Commission hearing and continues to refuse to disclose the report to plaintiff. The document along with an analysis of it have been transmitted to the Court for *in camera* inspection.

Plaintiff's position is that either the Dash Form 2029 was in fact relied upon by the Postal Service in its decision to remove plaintiff from his position, or that the Dash Form 2029 is so integrally a part of the investigations which culminated in removal that it must be deemed a part of the materials relied upon within the meaning of § 752.202(a)(2).

For his first argument plaintiff relies primarily on an ambiguous portion of an affidavit made by Mr. Schufman which appears at pages 293–94 of the Administrative record. In the affidavit Mr. Schufman states that when he made the removal decision, at a time *subsequent* to plaintiff's inspection of the materials relied upon, Mr. Schufman did not rely upon any Postal Inspection Service Form 2029. Plaintiff notes that this statement is not a denial that Mr. Schufman or other Postal Service personnel may have relied upon such reports in issuing the notice of adverse action, and notes further that § 752.202(a)(2) is addressed to the materials upon which the original notice is based, not upon which the final decision is based.

A fair reading of the Schufman affidavit taken as a whole clearly reveals that there has been no procedural miscarriage as claimed by plaintiff. The affidavit not only disclaims *reliance* upon the Dash Form 2029, it also disclaims any *knowledge of* such a document. Obviously, if Mr. Schufman had seen or relied upon the Dash Form 2029 prior to his removal decision, he could not state under oath that he subsequently had no knowledge of such a report. Moreover, Mr. Schufman swears that he did rely on the documents in the adverse action file. It is apparent, then, that the Dash Form 2029 was not a part of that file, and that none of Mr. Schufman's subordinates, who may have been involved in the notice stage of the proceedings, could have seen or relied upon the Dash report.

Mr. Schufman's sworn statement of his ignorance of the Dash Form 2029 is inherently credible in light of the respective roles of Postal Service management personnel and the Postal Inspection Service. The Postal Inspection Service is a separate and specialized branch within the United States Postal Service. The Inspection Service's primary responsibility is protection of the mail, investigation of offenses relating to the mail, and conducting "operating inspections and audits for the Postal Service." 39 C.F.R. § 224.7. Essentially, the Inspection Service functions as a law enforcement agency and has responsibility for investigating the Postal Service itself. In view of the sensitive nature of an organization's self-investigations, it is not surprising that noninvestigatory personnel in the regular course of business would not be privy to all information generated by the Inspection Service.

The regulations provide for a separate chain of command for the Inspection

Service, which is "headed by the Chief Inspector, who reports directly to the Postmaster General." 39 C.F.R. § 224.7. The regulations further provide:

"Do not discuss information concerning offenses or suspected offenses of postal employees with anyone outside the Inspection Service." 39 C.F.R. § 232.1(d).

Since the regulations thus require confidentiality and establish a separate line of communication for the Inspection Service, it would be most unusual for Postal Service managerial personnel not directly involved in an investigation to be aware of internal Inspection Service documents. Postal Inspector Hypke's testimony that the Form 2029's were not part of the adverse action file but instead "just went to the Inspector in Charge" is direct evidence that normal procedures were followed in this case. There is persuasive evidence that throughout the investigation of and proceedings against plaintiff the Dash Form 2029 remained within the Inspection Service itself and was not actually part of the materials relied upon by Postal Service management under § 752.-202(a)(2). There is no evidence to the contrary.

Plaintiff argues that the Dash Form 2029 must be deemed to be part of the materials relied upon. The notice of adverse action was issued following an investigation. A crucial link in that investigation was Mr. Jackson, the SCEA employee with whom plaintiff dealt. The Dash Form 2029 concerns an interview with Mr. Jackson on April 30, 1974, and is obviously an important part of the investigation which led to the notice. It is plaintiff's position that the notice was based on the investigation and that any reasonable interpretation of the regulations must require the Postal Service to disclose the significant materials developed during the investigation. The difficulty with plaintiff's position is that § 752.202(a)(2) does not require disclosure of all materials which could have formed the basis for adverse action. Only the material "on which the notice is based and which is relied on to support the reasons in that notice," 39 C.F.R. § 752.202(a)(2), must be made available for employee inspection. It is not the Inspection Service, but Postal management, which makes the removal decision; and it is clearly only the materials available to management which must be disclosed. Requiring management to make available materials not in management's possession, and of which management has no knowledge, would be anomalous at best, and the Court does not interpret the regulations to impose such a nonsensical burden. Additionally, § 752.-202(a)(2) specifically contemplates that not all *investigative* material need be made available to the employee, for among the materials to be disclosed are "investigative reports *or* extracts therefrom." 5 C.F.R. § 752.202(a)(2) (emphasis supplied). In this case the Inspection Service provided management with investigative *memoranda* which were extracts from and compilations of investigative *reports* and other raw data developed during the investigation. It is apparent that management by disclosing these memoranda and other materials in its possession complied with § 752.-202(a)(2) and made available to plaintiff extracts from the investigative report at issue. The regulation requires nothing more.

Plaintiff's concern about the Dash Form 2029 is understandable. The report deals with an important step in the investigation, and the Postal Service has been resolute in its refusal to disclose the report. This administrative intransigence naturally gives rise to strong suspicions that something of importance to plaintiff's defense has been withheld. The nondisclosure of materials which might be exculpatory, might disclose bias, and might otherwise embarrass the government's case would seriously implicate notions of fundamental fairness and could give rise to a claim of violation of due process. *Cf., Imbler v. Pachtman,* —— U.S. ——, ——, 96 S.Ct. 984, 1000–1001, 47 L.Ed.2d 128, 150–151, 44 U.S. L.W. 4250, 4260–61 (1976) (White, J., concurring in the judgment.

The position of the plurality in *Arnett v. Kennedy, supra,* that a Federal employee's due process rights extend only to those procedural protections provided for in the relevant statutes and regulations, was squarely rejected by a majority of the Court. *Arnett v. Kennedy, supra,* 416 U.S. at 166–67, 94 S.Ct. at 1650, 40 L.Ed.2d at 40 (Powell, J., concurring and joined by Blackmun, J.), 177–78, 94 S.Ct. at 1655–56, 40 L.Ed.2d at 46 (White, J., concurring in part and dissenting in part) and 209–211, 94 S.Ct. 1671–1672, 40 L.Ed.2d 64–66 (Marshall, J., dissenting and joined by Douglas, J., and Brennan, J.). This Court concludes that it must look beyond the procedural protections contained in § 752.202(a)(2). If the Postal Service's nondisclosure of the Dash Form 2029 amounted to withholding of exculpatory evidence, plaintiff would be entitled to relief under *Arnett v. Kennedy, supra.*

The Court has examined the Dash Form 2029 which has been submitted for *in camera* inspection. That report contains no information which was not disclosed to plaintiff and is merely redundant. There are no exculpatory matters; there is no evidence of bias. While the agency's rigid position regarding the Dash Form 2029 is perplexing, the agency is within its rights under the regulation,[2] and, absent evidence of due process violations,[3] the agency's decision not to disclose the Dash report must be honored.

Upon an examination of this record the Court is convinced that plaintiff was accorded a full and fair consideration of his case free from any procedural irregularities and that plaintiff's due process rights have been protected. The Postal Service's motion for summary judgment will be granted.

II. *MOTION OF THE UNITED STATES OF AMERICA FOR SUMMARY JUDGMENT.*

Whatever basis, if any, there may be for subject matter jurisdiction over the United States of America, the scope of review is no greater than that for the Postal Service. Having determined that the Postal Service's motion for summary judgment must be granted, the Court will likewise grant the alternative motion for summary judgment of the United States of America. It is therefore unnecessary to consider the complex issues of sovereign immunity, and of the application of the Tucker Act, underlying defendant's other motions.

IT IS ORDERED:

1. That plaintiff's motion for summary judgment be denied.

2. That the motions of the United States Postal Service and the United States of America for summary judgment be granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

IT IS FURTHER ORDERED:

That the Inspection Service Internal Document submitted to the Court *in camera* and the Postal Service Comparison and Analysis thereof be sealed by the Clerk of Court in a separate envelope and retained in the Clerk's file for possible examination by the Court of Appeals in the event of an appeal.

---

**2.** The Court has decided simply that the Postal Service is not required to disclose the Dash Form 2029 under regulations pertaining to employee removal. Plaintiff has not invoked the procedures set forth in the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and the Court has no occasion to determine whether the Dash Form 2029 would be exempt from disclosure under those statutes.

**3.** Due process does not require disclosure of all possible information, no matter how redundant or irrelevant. Since the nondisclosure in this case was immaterial to the removal decision and concerned merely redundant information, the fact of nondisclosure, standing alone, does not give rise to the sort of due process claim which the six Justices who concurred and dissented in *Arnett v. Kennedy, supra,* would recognize.