Matthew KNUCKLES, Plaintiff,

v.

William BOLGER, Postmaster General, United States Postal Service, United States Postal Service, Ruth Prokop, Chairperson, Merit Systems Protection Board, and Merit Systems Protection Board, Defendants.

No. 80–271C(3).

United States District Court,
E. D. Missouri, E. D.

May 29, 1980.

Edward Welch, Edwardsville, Ill., Ira M. Young, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction and on the parties' cross-motions for summary judgment. The plaintiff, a former employee of the defendant United States Postal Service ("the Service") brings this action for reinstatement, with back pay, to his position as a clerk with the Service. Plaintiff also seeks an injunction against any further proceedings against him by the defendants. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361.

The exhibits introduced at the hearing on plaintiff's motion for a preliminary injunction and submitted in support of the parties' cross-motions for summary judgment show that the following facts are undisputed:

1. The plaintiff, as a veteran, is a "preference eligible" and an "employee" within the meaning of 5 U.S.C. § 7511(a)(1)(B). By letter dated August 24, 1979, the defendant Service, plaintiff's employer at that time, informed the plaintiff that "it is proposed to remove you from the Postal Service no earlier than 7 days from the time you receive this notice. There is reasonable cause to believe that you are guilty of a crime for which a sentence of imprisonment can be imposed." The letter went on to inform the plaintiff that the reason for the proposed action was "converting postal funds to your own use"; it specified six occasions on which the plaintiff had allegedly failed to affix postage on postage due mail when the mail was purchased. The letter informed the plaintiff of his right to file an answer, including affidavits, in opposition to the proposed action.

2. The plaintiff did submit a response; however, by letter dated September 5, 1979, the plaintiff was informed that his employment with the Service would be terminated effective September 7, 1979.

This letter informed the plaintiff of his right to appeal to the defendant Merit Systems Protection Board ("the Board"). The plaintiff did appeal to the Board, pursuant to 5 U.S.C. §§ 7513(d) and 7701. The Board held a hearing on November 7, 1979, on the plaintiff's appeal, after denying plaintiff's motion for judgment; plaintiff's motion for judgment was based on the fact that on October 19, 1979, the plaintiff had been acquitted by a federal jury of criminal charges identical to the allegations contained in the Service's notice of proposed dismissal.

3. On December 12, 1979, the Board's presiding official issued a decision upholding the plaintiff's removal from the Service. The basis of the decision was that a preponderance of the evidence established that on five of the six occasions specified, the plaintiff had converted postal funds to his own use. A "Notice" in the decision indicated that the decision would become final on January 16, 1980, unless a petition for review had been filed with the Board by that date.

4. On January 18, 1980, the Board reopened the plaintiff's case and remanded it to a presiding official.[1] The Board's order stated that the elements required to prove a criminal violation of 18 U.S.C. § 641 had not been established by a preponderance of the evidence. The Board found that the Service's evidence did prove plaintiff's "serious violations of accounting procedure", and the Board indicated that this was in fact the charge described in the Service's specifications.

The Board concluded that the Service had committed the "procedural error" of mislabelling the charge against the plaintiff; it remanded to the presiding official for further proceedings to determine whether this error had been harmful and had substantially prejudiced the plaintiff's rights.

5. The presiding official, on February 4, requested memoranda of law from the parties on the issue of "mislabeling of the charge", in accordance with the Board's instructions. The Service's memorandum was submitted on March 5, 1980; the plaintiff's memorandum was submitted on February 26, 1980.[2] The issue is now pending before the presiding official. The Service's memorandum was captioned "United States Postal Service's motion to Reopen and for Reconsideration of the Board's Order Dated January 18, 1980"; a copy of the memorandum/motion has been forwarded to the Board by the presiding official considering the case on remand.

The plaintiff alleges, in this action, that the Board has initiated its own charges against the plaintiff, in that "harmful error" is an affirmative defense pursuant to 5 C.F.R. § 1201.56(b) and the plaintiff himself never raised the defense. Plaintiff also alleges that his due process rights were violated by the Service because plaintiff was never notified that he was being removed for violations of accounting procedures and that if he was removed for such violations, he was entitled to 30 days' notice, not 7 days', pursuant to 5 U.S.C. § 7513(b)(1).

---

1. The defendants have suggested in their memorandum in support of their motion to dismiss that the plaintiff petitioned the Board for review. Defendants' memorandum at 2. However, plaintiff's Exhibit "F", a letter from the Board to the Service's Assistant Regional Labor Counsel who participated in the instant case, sets out clearly that the Board reopened *sua sponte* and that no petition for review was filed. This letter is undated. Whatever confusion there may have been in the Service as to the moving force behind the reopening has undoubtedly been dispelled. In any event, it is immaterial to the parties' motions whether the reopening was prompted by the plaintiff or occurred *sua sponte*, and none of the parties has argued in this case that it was prejudiced by the manner of reopening. *Sua sponte* action

by the Board is provided for by 5 U.S.C. § 7701(e)(1)(B). Subsection (e)(1) provides in part:

"[A]ny decision under subsection (b) of this section [setting forth the requirement of a written decision after a hearing on an appeal] shall be final unless—
(A) a party to the appeal or the Director petitions the Board for review within 30 days after the receipt of the decision; or
(B) the Board reopens and reconsiders a case on its own motion."

Remand to the presiding official is provided for by 5 C.F.R. § 1201.116(a)(3) (1979).

2. The instant action was filed on February 25, 1980.

The defendants contend that plaintiff has not made a showing of irreparable injury sufficient to entitle him to relief in this action, and that this Court is without jurisdiction over this action because the plaintiff has not exhausted his administrative remedies. Defendants also assert that, assuming judicial review is proper, the correct forum is the United States Court of Claims or Court of Appeals, pursuant to 5 U.S.C. § 7703(b)(1).

The defendants rely primarily on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). In *Sampson*, the United States Supreme Court reversed the decision of the Court of Appeals for the District of Columbia, which had affirmed the District Court's entry of a temporary restraining order against the plaintiff's discharge. The plaintiff in *Sampson* was a probationary employee of the General Services Administration (GSA). After receiving notice that she would be discharged, plaintiff filed suit in District Court, claiming that GSA had not followed its own procedures in discharging her. She also appealed to the Civil Service Commission, and instituted her District Court action while her administrative appeal was pending. The District Court entered a temporary restraining order, which the court later ordered continued until such time as a certain GSA official should appear to testify.

The Supreme Court, in reversing, noted that the injunctive relief provided by the District Court was likely to have a disruptive effect on the administrative process; the Court also noted "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs'." 415 U.S. at 83, 94 S.Ct. at 949 (citation omitted). The Court held that the order entered by the District Court was to be viewed as a preliminary injunction. As such, the order had been entered without a showing of irreparable injury sufficient to override the considerations just cited. The plaintiff's unverified complaint alleged that she might be deprived of income, that spurious charges would remain in her records, and

that she would be greatly embarrassed. The Court held that, even had the plaintiff made a showing of those factors, sufficient irreparable injury would not have been demonstrated.

The plaintiff, in turn, contends that his case falls within the rationale of *Marsden v. United States Postal Service*, 390 F.Supp. 329 (D.Minn.1974), in which the District Court temporarily reinstated a Postal Service employee, who had not completed an appeal to the District Manager, because the Court found that the Service had not complied with applicable statutes and had given the plaintiff only 24 hours' notice of his suspension. The Court excused the plaintiff's failure to exhaust his administrative remedies, apparently on the ground that the Service had acted in contravention of specific statutory procedures. The Court in *Marsden* distinguished *Sampson* on two grounds: first, that Marsden was a "preference-eligible" and not a mere probationary employee, and second, that there was no factual issue in *Marsden*, as there was in *Sampson*, as to the reason for the employee's dismissal. The *Marsden* court did not address the issue of irreparable injury.

It is not clear to this Court that the plaintiff's probationary status in *Sampson* exerted any influence on the Supreme Court's actual holding in that case.[3] The Court did observe that Congress has accorded probationary employees fewer protections than permanent employees, including preference eligibles. 415 U.S. at 81, 94 S.Ct. at 948. It is true that the probationary plaintiff in *Sampson* relied solely on Civil Service Commission regulations, and not on procedures provided by Congress, as is true in the instant case. However, the factors listed by the Court as counterbalancing the showing of irreparable harm required to be made by the plaintiff: historical denial of all equitable relief in cases involving governmental employment, the rule allowing the Government the widest latitude in its own affairs, and the traditional judicial reluctance to enforce personal service contracts, are equally compelling

---

3. The Fifth Circuit expressed a similar opinion in *Morgan v. Fletcher, infra.*

regardless of the procedures to which an employee is entitled, by statute or by regulation, before discharge.

■ Secondly, it is not clear to this Court why it should be of any importance whether the facts surrounding the plaintiff's discharge are or are not in dispute. The Board does not operate solely as a fact-finding body. The judicial deference to a government employee's ongoing administrative appeal must extend, in the absence of irreparable injury, to a situation in which the underlying facts are quite clear.

The Fifth Circuit has applied *Sampson* to a case with facts similar to those of the instant case. *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975). Plaintiff in *Morgan* was a tenured civil servant to whom the District Court had granted preliminary injunctive relief against discharge by the National Aeronautics and Space Administration. The plaintiff's showing of irreparable injury included the facts that plaintiff's salary constituted 45% of the family income and that plaintiff's discharge would probably result in the foreclosure of her family's home. The Court of Appeals held that, under *Sampson*, this was an insufficient showing of injury; in so holding the Court observed that "[p]robationary employees are not afforded the greater procedural advantages available to tenured federal employees. Although the plaintiff in the present case was a tenured civil servant, the distinction would not appear to have any great effect on whether the employee was irreparably injured." 518 F.2d at 239 n.3.

In *Barnes v. Chatterton*, 515 F.2d 916 (3d Cir. 1975), the Third Circuit applied the *Sampson* standard in a case involving a discharged preference eligible employee in the Navy. The employee sought an injunction in District Court requiring the examiner presiding at the plaintiff's appeal to the Civil Service Commission to request the Navy to make certain documents available to the plaintiff. The District Court dismissed the complaint, and the Court of Appeals affirmed, basing its decision on the ground that plaintiff had not exhausted his administrative remedies and that he had shown no irreparable injury nor clear violation of his statutory or constitutional rights which would excuse the failure to exhaust. The Court observed that any judicial review of the agency's action would encompass the issue whether the agency had followed the procedures prescribed by law. The Court concluded:

> The requirement that Barnes exhaust his administrative remedies thus affects only the timing, not the effectiveness of judicial review. The delay, of course, is not without cost and we regret the additional pecuniary hardship and stress imposed upon Barnes. We are bound, however, by the holding of the Supreme Court that such costs do not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 84–92, 94 S.Ct. 937, [950–953] 39 L.Ed.2d 166 (1974).

■ Accordingly, this Court agrees with the Service that the instant case falls within the holding of *Sampson*. The Supreme Court set out clearly in that case the requirement that an extraordinary injury be shown before a governmental employee is entitled to an injunction pending administrative exhaustion. The Court noted that "we have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself will not support a finding of irreparable injury, however severely they may affect a particular individual. But we do not wish to be understood as foreclosing relief in the genuinely extraordinary situation." 415 U.S. at 92 n.68, 94 S.Ct. at 953.

■ The only evidence presented by the plaintiff in the instant case on the issue of irreparable injury, beyond the conclusory allegation of irreparable injury in the verified complaint, is contained in the plaintiff's affidavit, attached as Exhibit "E" to the complaint. Dated February 22, 1980, the affidavit states in part as follows:

2. I am presently unemployed, despite constant attempts by me to find employment since my discharge by the U.S. Postal Service effective September 8, 1979.

3. I am married and have two children, the youngest of whom is 8 months old. My wife is unemployed.

4. After a 5 week penalty, I now receive unemployment compensation in the amount of $85.00 per week. My wife also receives unemployment compensation and a temporary benefit call [sic] TRA as a result of her employment with Chrysler Corporation.

5. I am unable to meet my outstanding indebtednesses as they become due because I do not have sufficient income. I am buying my own home and I'm afraid of losing it.

6. As a result of the charge of converting postal funds to my own use which was brought against me, I've had to pay substantial attorney's fees and I still owe attorney's fees.

The Court is constrained to find that, under *Sampson*, this is an insufficient showing of injury to support the plaintiff's claim for injunctive relief. In so holding, this Court observes that in *Sampson*, the Supreme Court emphasized the fact that plaintiff's discharge would create a temporary postponement of income only, by virtue of the provisions of the Back Pay Act, 5 U.S.C. § 5596, should plaintiff's discharge ultimately be reversed. The Court noted that the monetary relief provided by the Back Pay Act "prevent[s] the loss of earnings on a periodic basis from being 'irreparable injury' in this type of case." 415 U.S. at 90, 94 S.Ct. at 953. The instant case does not fall within the scope of the Back Pay Act because the Postal Service is not an "Executive Agency" within the meaning of 5 U.S.C. § 105, by virtue of its exclusion from the provisions of 5 U.S.C. § 104, and hence the Service is not an "agency" within the meaning of § 5596(a). *White v. Bloomberg*, 501 F.2d 1379, 1381 n.2 (4th Cir. 1974). However, by virtue of certain provisions of the Employee & Labor Relations Manual of the Service, the plaintiff will be entitled to receive an award of back pay if his discharge is ultimately found to have been unjustified. Employee & Labor Relations Manual, Subchapter 430, §§ 431, 436. The conditions and limitations on such an award are similar to those contained in 5 C.F.R.

§§ 550.801 et seq., implementing the Back Pay Act. Therefore, the Court is compelled to find that the plaintiff's showing of injury is insufficient to entitle him to relief in this Court.

■ The plaintiff contends, however, that his statutory and constitutional rights have been violated by the Board's remand in his case, and that a showing of irreparable injury is therefore unnecessary. The cases which plaintiff cites in support of this proposition all predate *Sampson*, with the exception of *Marsden*, discussed above. This Court believes that, after *Sampson*, such an argument is not available to a discharged government employee seeking injunctive relief in advance of the completion of administrative appeals. To the extent that *Barnes v. Chatterton, supra*, may be read to express a contrary opinion, this Court does not find it persuasive. The Supreme Court's opinion clearly held that an extraordinary showing of irreparable injury is the *sine qua non* of injunctive relief from preliminary agency action involving a government employee.

■ Moreover, it must be noted that this Court will not have jurisdiction over any appeal the plaintiff might make from the final Board decision, 5 U.S.C. § 7703(b)(1), and that the plaintiff is not merely seeking preliminary relief until such time as his appeal may be filed; rather, the plaintiff in essence seeks a writ of mandamus to require his reinstatement and the termination of the administrative proceedings. The writ of mandamus is "an extraordinary remedy, to be issued only under extraordinary circumstances." *Cook v. Arentzen*, 582 F.2d 870, 876 (4th Cir. 1978). One of the requirements for issuance of the writ is a lack of other adequate remedy for vindication of the plaintiff's rights. *Id.*; 1 Moore Federal Practice ¶ 0.62[17] at 700.51. For the reasons stated above, this Court finds that the plaintiff is not suffering irreparable injury and that his administrative and ultimate judicial appeals provide an adequate remedy for any violation of his rights that may have occurred.

Accordingly, because the plaintiff has failed to state a claim upon which relief may be granted, the Court will grant the defendants' motion for summary judgment.